# MOHICAN VALLEY CONCRETE CORPORATION ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF FAIRFIELD ET AL.
## (AC 21794)

Schaller, West and Peters, Js.

Argued October 22, 2002—officially released February 11, 2003

*Carolyn W. Kone,* for the appellants (plaintiffs).

*John F. Fallon,* for the appellees (defendant Geza Scap et al.).

*Richard H. Saxl,* town attorney, for the appellee (named defendant).

*Opinion*

PETERS, J. General Statutes § 14-54[1] requires a person who contemplates establishing a new automobile dealership in this state to obtain a state license. A state license, in turn, is conditioned upon approval of the proposed location by a local zoning board. This case concerns the validity of a zoning board's decision to grant such an approval.

The trial court held that the board had given sufficient notice of its proceedings and had properly applied the relevant provisions of the town's zoning regulations. The court, however, declined to rule on the sufficiency of the evidence to support the board's decision because, in violation of General Statutes § 14-55,[2] the board had

---

[1] *General Statutes § 14-54 provides in relevant part:* "Location to be approved by local authority. Any person who desires to obtain a license for dealing in or repairing motor vehicles shall first obtain and present to the commissioner a certificate of approval of the location for which such license is desired from the selectmen or town manager of the town, the mayor of the city or the warden of the borough, wherein the business is located or is proposed to be located, except in any city or town having a zoning commission and a board of appeals, in which case such certificate shall be obtained from the board of appeals. . . ."

[2] General Statutes § 14-55 provides in relevant part that "[t]he reasons for granting or denying such application shall be stated by the board or official."

failed to state the reasons for its decision on the record. In light of this violation, the court remanded the case to the zoning board with direction to state the reasons for its decision. We disagree with the court's remand order but affirm its judgment in all other respects.

The defendants Geza Scap and Julie M. Scap obtained a certificate of approval from the defendant zoning board of appeals of the town of Fairfield (zoning board) to locate a proposed automobile dealership at 251 Commerce Drive in Fairfield.[3] Under § 27.1 of the Fairfield zoning regulations,[4] the approval took the form of granting the defendants a special exception. The plaintiffs, Mohican Valley Concrete Corporation,[5] Thomas Greenawalt II, Donna Sedgewick and Mark A. Greenawalt, who had contested the defendants' application before the zoning board, appealed to the trial court.[6] The court upheld the action of the zoning board but remanded the case for the purpose of eliciting a statement of its reasoning. The plaintiffs have appealed.

---

[3] For the sake of convenience, we will refer to the individual defendants as the defendants and to the zoning board of appeals as the zoning board.

[4] Section 27.1 of the Fairfield zoning regulations provides: "The Commission may grant a Special Exception for the establishment of a use designated as a Special Exception use in these Zoning Regulations in accordance with these Special Exception Regulations, and provided that, in the case of the Designed Business Districts and the Designed Industrial District, the requirements of Sect. 25.0 of the Zoning Regulations, wherever applicable, have also been met. All requirements of this section are in addition to all other requirements applicable to the district in which the Special Exception use is located."

[5] Except for the Mohican Valley Concrete Corporation, all of the plaintiffs are members of the Greenawalt family. They own a parcel of property that abuts the property that was to be used for the proposed automobile dealership. Mohican Valley Concrete Corporation is their long-term tenant. Mark A. Greenawalt was the only member of the family who spoke at the zoning board public hearing.

[6] Although the plaintiffs' appeal challenges the decision of a local zoning board, their appeal is governed not by General Statutes § 8-8, but by General Statutes § 14-57. The latter statute incorporates the rules contained in General Statutes § 4-183 of the Uniform Administrative Procedure Act.

The record discloses the following undisputed facts. The proposed site, 251 Commerce Drive, is located in a designed industrial district, in which automobile dealerships are a permitted use. The property previously had been used as a tractor trailer truck depot. Although the zoning board approved this location for the defendants' proposed automobile dealership, it did not grant the defendants an unconditional special exception. The defendants agreed that there would be "no tractor trailer delivery of inventory on site" and that "all employee parking would be on site."[7]

In their appeal, the plaintiffs challenge the decision of the zoning board on several grounds. In their view, the zoning board (1) published a misleading notice of the public hearing in violation of § 14-55, (2) issued inadequate posthearing notice of its decision in violation of § 14-55, (3) misconstrued Fairfield zoning regulations and (4) reached its decision without sufficient evidentiary support. With respect to the last ground, they also challenge the propriety of the court's decision not to address this issue on its merits.

Each of the issues raised by the plaintiffs concerns a question of law. See, e.g., *State* v. *Russo*, 259 Conn. 436, 447, 790 A.2d 1132 (statutory construction), cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002); *Lauer* v. *Zoning Commission*, 220 Conn. 455, 461–62, 600 A.2d 310 (1991) (prehearing notice); *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 331, 589 A.2d 351 (1991) (sufficiency of evidence); *Akin* v. *Norwalk*, 163 Conn. 68, 74, 301 A.2d 258 (1972) (posthearing

[7] After a subsequent hearing before the Fairfield plan and zoning commission, the defendants also agreed that "1. There shall be no unloading of cars in the right of way of Commerce Drive. 2. There shall be no vehicles displayed in front of the building. 3. Curbs and sidewalks are required per recommendations of the Engineering Department. 4. Plans for site fencing shall be submitted to the Commission."

notice). We must, therefore, undertake a plenary review of each of them.

We are persuaded that the trial court properly upheld the decision of the zoning board. With respect to the remand order, however, we agree with the plaintiffs that the trial court should itself have determined the sufficiency of the zoning board record to sustain the board's decision.

## I

## REMAND ORDER

The trial court's order of remand led this court to ask the parties to brief whether this court has jurisdiction to hear this appeal. We were concerned that the judgment rendered by the court might not be a final judgment for the purposes of appellate review. In *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 409–12, 521 A.2d 566 (1987), our Supreme Court held that a remand order for further evidentiary determinations is not immediately reviewable.

For two reasons, we conclude that we have jurisdiction to hear the plaintiffs' appeal. First, *Schieffelin & Co.* does not control this case. An order of remand for articulation of the reasoning behind the agency's decision does not require further proceedings with additional evidentiary presentation. Second, and more important, the trial court's remand order was improper.

The court based its remand order on the text of § 14-55, which requires a local zoning board to state the reasons for its decision to approve the location of a proposed automobile dealership. The question posed by this statute is whether the legislature intended § 14-55 to guide the proceedings of a zoning board or to limit the scope of judicial review of a trial court. The trial court assumed that the statute was addressed to the court. We disagree.

Well established principles govern our construction of a state statute. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, it is an elementary rule of statutory construction that we must read the legislative scheme as a whole in order to give effect to and harmonize all of the parts." (Citation omitted; internal quotation marks omitted.) *Coregis Ins. Co.* v. *Fleet National Bank*, 68 Conn. App. 716, 720, 793 A.2d 254 (2002).

On their face, the instructions contained in § 14-55 do not address the scope of judicial review of zoning board decisions. In our view, that omission was deliberate.

We are persuaded that the statute should be construed literally and narrowly because it is reasonable to assume that the legislature understands how zoning boards operate. It is common knowledge that members of a zoning board typically are laypersons more familiar with their community than with the niceties of applicable law. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 554, 600 A.2d 757 (1991). Zoning boards "ordinarily conduct their proceedings with some degree of informality." *Caserta* v. *Zoning Board of Appeals*, 219 Conn. 352, 362, 593 A.2d 118 (1991). In light of these institutional realities, the legislature may well have thought it useful to provide specific statutory guidance for the manner in which zoning boards should conduct their proceedings under §§ 14-54 and 14-55. Trial courts do not need such guidance.

Our construction of § 14-55 finds further support in our case law construing other statutes that require zoning boards or administrative agencies to put on the record an express statement of the reasoning behind their decisions. See, e.g., General Statutes §§ 8-3 (g) (site plans), 8-26 (subdivision plans), 22a-109 (coastal site plans), 22a-128 and 22a-275e (solid waste disposal). If a board has nonetheless failed to state its reasoning, reviewing courts must themselves search the record of the land use proceedings to determine the sufficiency of the evidence to support the decision of the board. See *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208, 658 A.2d 559 (1995); *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 588–89, 628 A.2d 1286 (1993); *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 743, 626 A.2d 705 (1993); see also R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 33.6, p. 168, § 33.8, p. 175, § 33.9, p. 179, § 33.10, p. 188; T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 473–76. The same rule applies to administrative appeals under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. See, e.g., *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 600–601, 590 A.2d 447 (1991); *Bard* v. *Commissioner of Motor Vehicles*, 62 Conn. App. 45, 51–52, 768 A.2d 960, cert. denied, 256 Conn. 906, 772 A.2d 595 (2001).

The task of searching the records falls, in the first instance, on trial courts, but if they fail to make the required search, appellate courts must do so. *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 208–209.

We conclude, therefore, that § 14-55 was intended to direct zoning boards to conduct their proceedings in accordance with the requirements stated therein. It was not intended to authorize a judicial remand order to cure the failure of a zoning board to state the reasons

for its decision. The court should have searched the record to ascertain whether the board's decision had sufficient evidentiary support.

## II

### PREHEARING NOTICE

Before we address the sufficiency of the evidence, we must consider whether the prehearing notice that was published by the zoning board complied with § 14-55. Although notice requirements may be jurisdictional; *Koepke* v. *Zoning Board of Appeals*, 223 Conn. 171, 174–75, 610 A.2d 1301 (1992); in this case the plaintiffs make no such claim. Their contention is that the notice was defective because it was misleading.[8]

Section 14-55 states the jurisdictional requirements for a prehearing notice. An applicant must publish timely notices that will inform the members of the public of the time and place of a public hearing with respect to a pending application for approval of the location of an automobile dealership.

It is accepted wisdom that the purpose of a prehearing notice is to permit members of the general public to prepare intelligently for a public hearing at which they may be heard about the merits of a pending application. See id.; *Jarvis Acres, Inc.* v. *Zoning Commission*, 163 Conn. 41, 47, 301 A.2d 244 (1972).

---

[8] The zoning board, in timely fashion, published the following:
"ZONING BOARD OF APPEALS
NOTICE OF PUBLIC HEARING
SEPTEMBER 3, 1998
"The Zoning Board of Appeals, under the Zoning Regulations of the Town of Fairfield will hear the following appeals in Meeting Room 1, Independence Hall, 725 Old Post Road, September 3, 1998 at 3:00 p.m. Executive Session follows public hearing. . . . 98-9-137 14. 251 Commerce Drive. Map 80 Parcel 19. Petition of Geza Scap and Julie Scap for an approval of new and used car location in accordance with Sections 21.3.1 and 27.4.8 of the Zoning Regulations. Permission to establish new automobile dealership. Premises: Designed Industrial District."

In this case, the plaintiffs claim that the notice was defective because its contents were misleading. The burden of proving that a notice was defective rests on the plaintiffs. See *Peters* v. *Environmental Protection Board*, 25 Conn. App. 164, 170, 593 A.2d 975 (1991).

The plaintiffs argue that the notice was misleading in three respects. First, it did not cite §§ 14-54 and 14-55. Second, it referred to the defendants' application, which, in turn, was misleading because of clerical errors and because of its failure to reference a related pending application before the Fairfield planning and zoning commission. Third, the notice must have been misleading because it led the zoning board to grant the defendants an inapplicable permit that they had not sought. Like the trial court, we are not persuaded.

Once basic jurisdictional requirements have been met, imperfections in the contents of a notice do not automatically deprive a zoning board of the authority to act on an application. A notice is not misleading even though it does not describe the proposed action "in detail or with exactitude." *Welles* v. *East Windsor*, 185 Conn. 556, 559, 441 A.2d 174 (1981). "Notice of a hearing is not required to contain an accurate forecast of the precise action which will be taken upon the subject matter referred to in the notice." *Neuger* v. *Zoning Board*, 145 Conn. 625, 630, 145 A.2d 738 (1958); see also R. Fuller, supra, § 46.3, pp. 417–18. Presumably, our courts have allowed zoning boards and administrative agencies some latitude with respect to such defects so as to avoid the harsh consequences of a jurisdictional defect, which permits a disappointed litigant to question a zoning board decision long after board proceedings have concluded, even if no appeal was taken. See *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 101, 616 A.2d 793 (1992); *Moscowitz* v. *Planning & Zoning Commission*, 16 Conn. App. 303, 313, 547 A.2d 569 (1988).

The plaintiffs maintain that the absence of a reference to §§ 14-54 and 14-55 was misleading because it did not inform the general public "of the nature and character of the proposed action and the standards for the relief sought." These standards require a consideration of matters such as proximity to schools, churches and theaters, and effect on public travel. Because a notice need not include a detailed statement of the issues that are relevant to an application for site plan approval, we conclude that the notice was legally sufficient. See *Welles* v. *East Windsor*, supra, 185 Conn. 558–59; *R.B. Kent & Son, Inc.* v. *Planning Commission*, 21 Conn. App. 370, 378, 573 A.2d 760 (1990). To the extent to which the plaintiffs object to the notice's references to the Fairfield zoning regulations, we disagree with that objection as well. It was appropriate to advise the public of the regulations that would govern the defendants' application for a special exception.[9]

The plaintiffs further claim that the notice was misleading because of clerical errors in the defendants' application for site approval. The plaintiffs do not allege that these errors in fact confused anyone. We know of no authority for the proposition that a notice is defective because of inaccuracies in another document to which the notice refers.

The plaintiffs' last claim is that the prehearing notice must have been misleading because the zoning board granted the defendants' application for an improper reason. It denominated its action as the grant of a variance rather than the grant of special exception. For notice purposes, this clerical error is irrelevant. The plaintiffs have not explained how the general public to whom a prehearing notice is addressed could have been misled by a posthearing action by the board.

---

[9] Although the plaintiffs have argued the relevance of § 21.4 of the Fairfield zoning regulations, they have not taken the position that the notice was defective for failure to refer to that regulation.

For the reasons stated, we conclude that the plaintiffs have not sustained their burden of showing that the prehearing notice issued by the zoning board was so misleading that it deprived the general public of an opportunity to consider whether to participate in the board's public hearing. The board had ample authority to act on the defendants' application for approval of the proposed location of their automobile dealership.

## III

### PUBLISHED NOTICE OF DECISION

The plaintiffs also claim that the decision of the zoning board cannot be sustained because of defects in the notice that, in accordance with § 14-55, was published after the hearing.[10] Like a prehearing notice, a posthearing notice must comply with statutory requirements to publish notice of its decision within the prescribed time period. Failure to meet these threshold requirements is a jurisdictional defect. *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 388, 311 A.2d 77 (1972); see also R. Fuller, supra, § 34.2, p. 195, § 41.8, p. 315. The plaintiffs do not argue that the notice was jurisdictionally defective.

The plaintiffs do challenge the contents of the posthearing notice. The test for the merits of a claimed defect in the contents of a posthearing notice is straightforward. The question is whether the notice adequately informed a reader of the action taken by the board or agency. "In reviewing the adequacy of the notice of decision employed here, we are mindful of the purpose such notice is meant to serve. The right of appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal

---

[10] Because of its remand order, the trial court dismissed this claim as moot. Having concluded that the remand order was improper, we address the plaintiffs' claim on its merits.

from and of forming an opinion as to whether that decision presents an appealable issue. Until the prospective appellant has either actual or constructive notice that a decision has been reached, the right of appeal is meaningless." (Internal quotation marks omitted.) *Bridgeport Bowl-O-Rama, Inc.* v. *Zoning Board of Appeals*, 195 Conn. 276, 281–82, 487 A.2d 559 (1985); see also R. Fuller, supra, § 46.5, p. 423. Employing this standard, we conclude that the notice in this case was adequate.[11]

According to the plaintiffs, the notice of decision was defective because it failed to mention (1) the activity for which the application had been filed or (2) the statutory authority under which the petition had been granted. They acknowledge, however, that they had constructive notice of the information contained in the prehearing notice, which contained the relevant facts. See *Jarvis Acres, Inc.* v. *Zoning Commission*, supra, 163 Conn. 47. Nonetheless, in their view, reference to that earlier notice did not cure the defect. Why not? The plaintiffs argue, once again, that the prehearing notice was defective because it was misleading.

The plaintiffs' argument hinges, therefore, on the claimed inadequacy of the prehearing notice. We have already rejected that claim in part II. Accordingly, we conclude that the notice of decision adequately informed the plaintiffs about the issues that they could pursue on appeal.

---

[11] The zoning board published the following notice:

"NOTICE OF DECISION

"On September 3, 1998, the Zoning Board of Appeals voted to GRANT WITH CONDITIONS, your application for variance (sic) pertaining to application of Geza Scap and Julie Scap

Site address: 251 Commerce Drive

Mailing address: c/o John Fallon, Esq.,

1305 Post Road, Fairfield, CT 06430

Case No.: 98-9-137. . . .

"Conditions of Approval: . . . 1. No tractor trailer inventory on site. All employee parking to be on site."

## IV

## FAIRFIELD ZONING REGULATIONS

The plaintiffs also argue that the defendants were not entitled to approval of their proposed location because their planned usage of the site, even though it complied with § 27.1[12] of the Fairfield zoning regulations, did not comply with the requirements of § 21.4 of the Fairfield zoning regulations.[13] The latter section provides in relevant part that "[t]he outside storage . . . of merchandise, supplies, machinery and refuse . . . shall be limited to an aggregate area not to exceed ten (10) percent of the area of the lot . . . ." The parties have stipulated that the defendants intend an outdoor display of cars that will exceed 10 percent of their lot.

The defendants argue that this regulation is inapplicable because § 27.4.8 lists automobile dealerships as one of the permissible uses of property in a designed industrial district. The trial court found this argument persuasive and so do we.

The trial court emphasized the text of subsection 27.4.8,[14] which states the conditions under which site

[12] See footnote 4 for the text of § 27.1 of the Fairfield zoning regulations.

[13] Section 21.4 of the Fairfield zoning regulations provides: "The outside storage or display of merchandise, supplies, machinery and refuse and/or the outside manufacture, processing or assembling of goods shall be limited to an aggregate area not to exceed ten (10) percent of the area of the lot. Any area used for outside storage or display and/or outside manufacture, processing or assembling of goods shall be appropriately screened from streets and adjoining property in such a manner as to conceal the foregoing materials from view to a height of five (5) feet with fences, walls or embankments in combination with other landscaping or shall be provided with evergreen shrubs and/or trees planted to grow so as to accomplish such screening within one (1) year. The Commission at the time of approval of a Special Permit as provided in Section 25.0 of the Zoning Regulations may adjust the aforesaid landscape requirements to particular circumstances of lot lines, topography, soil conditions and site design, while preserving the purpose and intent of the Zoning Regulations. This provision shall not apply to areas used for parking of registered motor vehicles in daily use."

[14] According to § 27.4.8 of the Fairfield zoning regulations, an establishment for the sale or rental of new and used automobiles must conform to the setback requirements of the Center Designed Business District.

approval in the form of a special exception may be granted for "establishments for the sale or rental of new and used automobiles . . . ." One of those conditions is that "outside storage and display of vehicles" must conform with setback requirements in designed business districts.[15] Section 27 imposes no other relevant conditions.

The plaintiffs do not take issue with this description of § 27.4. They concede that an automobile dealership is a permitted use at 351 Commerce Drive. They argue, however, that the court misread § 27.1, which states that an applicant for a special exception must comply not only with § 27 but also with "all other requirements applicable to the district in which the Special Exception use is located." In the plaintiffs' view, § 21.4 states one of these "other requirements." It is common ground that, if § 21.4 applies, the zoning board should have denied the defendants' application for a special exception.

In our view, the proper resolution of the relationship between §§ 27 and 21.4 turns on whether § 21.4 applies to an automobile dealership. The plaintiffs acknowledge that, for present purposes, § 21.4 applies only if automobiles are "merchandise." It is not intuitively obvious that automobiles are a good fit for "merchandise," especially when automobiles are compared to the other items listed in the section.[16]

Furthermore, the plaintiffs' argument overlooks the significance of the fact that § 27 demonstrates that the drafters of the Fairfield zoning regulations knew how to address directly the concerns raised by outdoor storage of automobiles. The fact that § 27 deals with out-

---

[15] Another condition states requirements for ingress and egress. No one has suggested that the defendants' proposed use of the property fails to satisfy these conditions.

[16] See footnote 13.

door storage by requiring setbacks rather than by imposing outright limitations on such storage does not persuade us to the contrary. Fairfield had the authority to write zoning regulations as it thought best.

We hold, therefore, that the specific inclusion of automobile dealerships in § 27 indicates that § 21.4 was not intended to include automobiles within the term "merchandise." "It is a well-settled principle of [statutory] construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 346, 680 A.2d 1261 (1996); see also *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, 72 Conn. App. 342, 351, 805 A.2d 735, cert. denied, 262 Conn. 922, 812 A.2d 864 (2002).[17]

In sum, we conclude that the zoning board properly construed and applied the Fairfield zoning regulations applicable to this case. The defendants were entitled to a special exception without regard to the restrictions contained in § 21.4 of the regulations.

V

SUFFICIENCY OF THE EVIDENCE

Finally, we must determine whether the record of the proceedings before the zoning board demonstrates that the board had sufficient evidence to sustain its approval of the defendants' proposed location. Our review of the evidence is governed by § 4-183 (j) (5) of the Uniform Administrative Procedure Act. Although § 14-45 of the General Statutes requires local zoning boards to decide the suitability of the location of an

---

[17] Our discussion is equally dispositive of the plaintiffs' claim that the defendants were obligated to comply with the screening requirements contained in § 21.4.

automobile dealership, under this statute a zoning board acts as an administrative agency. See *Mason* v. *Board of Zoning Appeals*, 143 Conn. 634, 637, 124 A.2d 920 (1956); see also *New Haven College, Inc.* v. *Zoning Board of Appeals*, 154 Conn. 540, 542, 227 A.2d 427 (1967).

General Statutes § 4-183 (j) defines the scope of judicial review of an administrative agency's action. A court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." Our courts have termed this the substantial evidence rule. "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the [plaintiffs] to demonstrate that the [zoning board's] factual conclusions were not supported by the weight of substantial evidence on the whole record." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 137, 778 A.2d 7 (2001); see also *Elf* v. *Dept. of Public Health*, 66 Conn. App. 410, 417–19, 784 A.2d 979 (2001).

In this appeal, the plaintiffs fault the decision of the zoning board on the ground that the zoning board failed to assign sufficient weight to the negative evidence presented by their expert traffic consultant about traffic conditions on Commerce Drive. That expert testimony was particularly trustworthy, according to the plaintiffs,

because it relied in part on a Fairfield traffic study, conducted several years earlier, that urged widening of Commerce Drive to correct undesirable road conditions. We disagree.

As the defendants point out, much of the plaintiffs' evidence was directed to traffic concerns with respect to Commerce Drive in general rather than to 351 Commerce Drive in particular. This lack of specificity diminished the significance of the testimony of the plaintiffs' expert witness, Herbert Levinson. Although Levinson apparently was well versed in an industry treatise describing traffic problems, he had had only minimal contact with the actual site. He had explored the site for no more than one hour in a visit that he himself characterized as "a very quick, cursory series of observations." He had not reviewed the defendants' building plans, nor had he any awareness of the prior use of the property. He based his concern about an exacerbated risk of automobile accidents only on his own intuition. The zoning board was entitled to find this expert evidence unpersuasive.

Furthermore, the plaintiffs' appellate emphasis on traffic concerns fails to take account of the testimony of the plaintiff Mark A. Greenawalt before the zoning board. Mark A. Greenawalt can fairly be assumed to have spoken for all the plaintiffs.[18] His opposition to the proposed location of the dealership was based not on traffic congestion but on possible devaluation of his own abutting property, which was used for industrial purposes. He stated that he would not have opposed the defendants' use of 351 Commerce Drive if they had intended to build an industrial building, such as a trucking terminal, rather than an automobile dealership. Because automobile dealerships are a permitted use in an industrial zone, his position was untenable. Nonethe-

---

[18] See footnote 5.

less, the zoning board reasonably might have understood his testimony as casting doubt on the significance of the traffic concerns about which the plaintiffs' expert witness had opined.

The plaintiffs maintain that, even if their opposition to the proposed location was unpersuasive, it was still the defendants' responsibility to establish their entitlement to a special exception. That is not so. "The burden is on the [plaintiffs] to demonstrate that the [zoning board's] factual conclusions were not supported by the weight of substantial evidence on the whole record." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, supra, 257 Conn. 137.

In any case, the zoning board had a substantial basis of fact for its decision. In addition to the fact that an automobile dealership was permissible at 351 Commerce Drive, the record shows that the dealership would improve traffic conditions at that location because a dealership would generate less traffic than that associated with the prior user, a truck trailer depot. The plaintiff Mark A. Greenawalt testified that the depot routinely had unloaded a significant number of vehicles from tractor trailers in a manner that obstructed entrance to and exit from his own property. By contrast, the defendants agreed that no tractor trailers would unload vehicles at their dealership. In addition, the defendants' proposed building plan indicated that the site would be used in a manner designed to minimize the risk of traffic congestion on Commerce Drive. Finally, the board might have taken account of the willingness of the defendants to accept a certificate of approval with conditions designed to mitigate some of the concerns raised by the plaintiffs.

In addition to the extrinsic evidence presented to the zoning board, its members were entitled to take into

account their personal knowledge of traffic conditions at and near 251 Commerce Drive. Zoning boards may rely upon their own knowledge in reaching decisions about matters such as traffic congestion and street safety. *Feinson* v. *Conservation Commission*, 180 Conn. 421, 427, 429 A.2d 910 (1980); *Welch* v. *Zoning Board of Appeals*, 158 Conn. 208, 213–14, 257 A.2d 795 (1969). Although the plaintiffs now take issue with this proposition, at the public hearing their counsel addressed the board with reference to "the location, you've all been out there." It is disingenuous now to argue to the contrary.

Taken as a whole, the record before the zoning board contained substantial evidence to sustain its decision to approve the location of the defendants' automobile dealership evidence. Sections 14-54 and 14-55 require nothing more.

The judgment is reversed only as to the remand to the defendant zoning board, and the case is remanded to the trial court with direction to render a judgment in favor of the defendants.

In this opinion the other judges concurred.