******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

A BETTER WAY WHOLESALE AUTOS, INC. *v.*
COMMISSIONER OF MOTOR VEHICLES
(AC 37402)

DiPentima, C. J., and Alvord and Agati, Js.

*Argued March 8—officially released July 26, 2016*

(Appeal from Superior Court, judicial district of New
Britain, Schuman, J.)

*Kenneth A. Votre*, for the appellant (plaintiff).

*Drew S. Graham*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (defendant).

*Opinion*

AGATI, J. General Statutes § 14-54 (a)[1] requires automobile dealers who wish to obtain a license "for dealing in . . . motor vehicles" first to obtain and present to the Commissioner of Motor Vehicles a certificate of approval from local officials in the municipality where the dealer wishes to operate. The defendant, the Commissioner of Motor Vehicles (commissioner), determined after an administrative hearing that the plaintiff, A Better Way Wholesale Autos, Inc., failed to comply with this statutory provision. The sole issue raised in this appeal is whether the administrative record contains substantial evidence to support this determination. We conclude that the record lacks substantial evidence to show that the plaintiff violated § 14-54 (a) and, accordingly, reverse the judgment of the Superior Court.

The following facts and procedural history are relevant to this appeal. The plaintiff is a used car dealer with a principal place of business located at 423 Rubber Avenue in Naugatuck. The Department of Motor Vehicles has issued the plaintiff two licenses to operate car dealerships at two separate locations in Naugatuck located at 423 and 381 Rubber Avenue, respectively. In addition to these parcels, the plaintiff leases a third, unlicensed parcel located on Old Firehouse Road in Naugatuck (storage lot), on which it stores several hundred cars. Pursuant to an anonymous complaint, the commissioner investigated whether the plaintiff was selling cars on the storage lot without a license. At the conclusion of this investigation, one of the commissioner's investigators, Robert Bellante, determined that the plaintiff had violated § 14-54 (a). Subsequently, the commissioner sent the plaintiff notice that it was to appear for an administrative hearing. In its notice, the commissioner alleged that the plaintiff had operated a car dealership on an unlicensed lot in violation of § 14-54 (a) and General Statutes § 14-52 (a),[2] a provision which requires, inter alia, individuals and entities to obtain used car dealer's licenses.

The parties appeared before an administrative hearing officer on February 22, 2013. At the hearing, the commissioner submitted evidence to prove that the plaintiff had operated a car dealership on the unlicensed storage lot. Specifically, the commissioner submitted Bellante's report, which stated that the storage lot contained several hundred vehicles; that he spoke with John Gorbecki, the plaintiff's principal; that Gorbecki informed Bellante that potential customers are permitted to view cars on the storage lot, but that sales take place at 423 Rubber Avenue; and that the gate to the storage lot is never locked because emergency vehicles, which the town parks on the storage lot, need to be able to exit in the event of an emergency. Bellante also reported that a storage trailer containing car keys, a

compressor, and a jump start was located on the storage lot. Steve Licitra, a different investigator employed by the commissioner, testified that he investigated the plaintiff independently of Bellante,[3] and that during his investigation, he spoke with two individuals on the storage lot. Licitra stated that when he asked these individuals what they were doing, they responded that they were looking at cars to buy. He testified that these individuals said that they were directed to the storage lot by a salesperson at the main office. He also stated that buyer guides were displayed prominently on the windows of the vehicles. When asked if he had any knowledge of whether the plaintiff had obtained approval from Naugatuck for the storage lot, Licitra stated that he did not know.

The plaintiff sought to demonstrate that its activities on the storage lot did not constitute operating a car dealership. To this end, the plaintiff elicited testimony from Licitra that neither he nor anyone else employed by the commissioner ever had witnessed any transactional conduct on the storage lot, such as negotiation between customers and salespeople, the exchange of cash, or the execution of bills of sale. The plaintiff also elicited testimony from Gorbecki that the storage lot was used only to store excess inventory, not to sell or to service cars. Gorbecki admitted that salespeople at 423 Rubber Avenue sometimes would direct customers to the storage lot to view cars, but he also testified that if a customer was interested in a car, that customer would return to the main office at 423 Rubber Avenue and the transaction would occur there. Finally, Gorbecki testified about discussions he had with local officials in Naugatuck, including the town's zoning manager. Specifically, Gorbecki testified that town officials wished to maintain a thoroughfare through the storage lot so that emergency vehicles could cut through in the event of an emergency.

The plaintiff also produced minutes from the June 16, 2010 meeting of the Naugatuck Zoning Commission (zoning commission). The minutes state that at that meeting, the zoning commission discussed whether to grant the plaintiff's application "to park cars on [the storage lot] located on Elm St[reet] and Rubber [Avenue]." The plaintiff also submitted a document, dated June 16, 2010, which appears to be approval from the zoning commission to park 400 cars on the storage lot. During cross-examination, Licitra admitted that he had not spoken with any local officials regarding approvals for the storage lot. Moreover, he conceded that he was not challenging the veracity or authenticity of the zoning commission minutes or the other documents submitted.

On August 2, 2013, the hearing officer issued his findings of fact, conclusions of law, and order. Specifically, he found that the plaintiff's activities at the storage lot

constituted "merchandising," which he concluded was part and parcel of its business of offering for sale and selling used cars. The hearing officer also found that the storage lot "was not approved by local authority for anything other than the parking of cars." Consequently, the hearing officer found that the plaintiff had operated a used car dealership at an unlicensed location in violation of §§ 14-52 (a) and 14-54 (a). Accordingly, the hearing officer ordered the plaintiff to pay a civil fine in the amount of $5000.

The plaintiff filed an administrative appeal in the Superior Court, pursuant to General Statutes § 4-183,[4] claiming that the hearing officer improperly concluded that it had violated §§ 14-52 (a) and 14-54 (a). After a hearing on the matter, the court, *Schuman, J.*, sustained the appeal with respect to the hearing officer's determination that the plaintiff had violated § 14-52 (a),[5] but affirmed the hearing officer's determination that the plaintiff had violated § 14-54 (a). In its analysis, the court sought to reconcile § 14-54 (a) with § 14-52 (a), notwithstanding the fact that it had found that the plaintiff had not violated § 14-52 (a). In particular, the court determined that "a person desiring a motor vehicle dealer's license under § 14-52 must first, *under § 14-54*, obtain a certificate of approval of the municipal authorities for the location for which such license is desired and then present the certificate to the commissioner." (Emphasis added.) Thus, the court determined that the license that a person "desires to obtain" under § 14-54 (a) is a license under § 14-52 (a). Although the court recognized that § 14-54 (a) "does not specifically state that a dealer must obtain a state license for each location where it wishes to operate," it nevertheless concluded that "the statute strongly implied that requirement by providing that a dealer shall obtain a certificate of local approval of the 'location for which such license is desired.' " Ultimately, the court concluded that § 14-54 (a) requires "an entity 'dealing in . . . motor vehicles' [to] obtain local approval *and then a state license for the location* in which it desires to do business" under § 14-52 (a). (Emphasis added.)

After reviewing the evidence in the administrative record, the court concluded that the plaintiff's conduct on the storage lot constituted " 'dealing in . . . motor vehicles' so that the plaintiff must obtain a local certificate of approval." The court remanded the case for a determination of the fine to be imposed, but noted that the fine could not exceed $1000 pursuant to General Statutes § 14-51a.[6] This appeal followed.

We begin with the standard of review. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to deter-

mine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . .

"It is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion . . . . The law is also well established that if the decision of the commissioner is reasonably supported by the evidence it must be sustained." (Citations omitted; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343–44, 757 A.2d 561 (2000).

On appeal, the plaintiff claims that the court improperly determined that § 14-54 (a) applies to the facts of the present case. Specifically, the plaintiff argues that the evidence does not demonstrate that it was "dealing in . . . motor vehicles" on the storage lot. The plaintiff argues that the storage lot was not operated as a car dealership, and, therefore, that it did not need approval of local officials under the statute. Additionally, the plaintiff argues that § 14-54 (a) does not require licensing at all; instead, it simply states that to the extent a person desires to obtain a license, such person must obtain local approval and present a certificate of approval to the commissioner.

In response, the commissioner seeks, as the court did, to correlate § 14-54 (a) with § 14-52 (a). In particular, the commissioner argues that § 14-54 (a) requires a license under § 14-52 (a) if the activities on the location at issue constitute "dealing in . . . motor vehicles." The commissioner argues that there is ample evidence in the record to support the court's determination that the plaintiff was "dealing in . . . motor vehicles" on the storage lot in violation of § 14-54 (a), such as the evidence that customers were directed to the storage lot and that buyer guides were displayed on the vehicles.

As a preliminary note, we must stress that the issue of whether the plaintiff violated § 14-52 (a) is not before

us.[7] Instead, we must determine whether there is substantial evidence in the administrative record to support the court's determination that the plaintiff violated § 14-54 (a). In order to do so, we must evaluate the statutory framework in subpart (D) of title 14 of the General Statutes.

The commissioner has the power to impose civil penalties for conduct that constitutes a violation of, among other provisions, § 14-54 (a). See General Statutes § 14-51a ("[t]he commissioner may, after notice and hearing, impose a civil penalty of not more than one thousand dollars on any person, firm or corporation who violates any provision of sections 14-54 to 14-67a, inclusive"). Section 14-54 (a), in turn, provides that "[a]ny person who desires to obtain a license for dealing in . . . motor vehicles in a municipality having a population of no less than twenty thousand shall first obtain and present to the commissioner a certificate of approval of the location for which such license is desired from the board or authority designated by local charter, regulation or ordinance of the town, city or borough wherein the business is located or is proposed to be located . . . ." In other words, § 14-54 (a) states that if a person desires to obtain a license, then such person must obtain approval from local officials and present proof of that approval to the commissioner. The failure to obtain such approval from local officials and to verify such approval with the commissioner is the conduct that is proscribed by the statute, and such conduct may result in civil penalties pursuant to § 14-51a. Thus, we must determine whether the record contains substantial evidence that the plaintiff failed both to obtain local approval and to present such approval to the commissioner.

On the basis of our review, we conclude that the administrative record lacks substantial evidence to support the hearing officer's determination. To begin with, we note that the plaintiff has maintained throughout that it never desired to obtain a license to "[deal] in . . . motor vehicles" on the storage lot. No evidence to the contrary has been presented. Second, and more importantly, the record is devoid of any evidence that the plaintiff, consistent with a desire to obtain a license, failed either to obtain a certificate of approval from local officials or to present such a certificate to the commissioner. The documentary and testimonial evidence adduced at the hearing overwhelmingly addressed whether the plaintiff was operating a used car dealership on the storage lot. For example, there was evidence that the plaintiff stored hundreds of cars on the storage lot, which were displayed with buyer guides, and that the plaintiff directed customers onto the storage lot to view the inventory.

But as we previously noted, this appeal *only* requires us to consider whether the plaintiff failed to obtain and

verify local zoning approval. See General Statutes § 14-54 (a). None of the evidence concerning whether the plaintiff operated a car dealership on the storage lot speaks to whether the plaintiff failed to obtain and verify local zoning approval. Moreover, practically none of the evidence submitted to the hearing officer addressed whether local officials in Naugatuck had any knowledge of or involvement in permitting the storage lot. The evidence that was submitted to this issue, however, fell far short of demonstrating that such approval was not obtained. For example, Licitra was asked if he was aware of whether the plaintiff obtained approval from Naugatuck officials for the storage lot, and he responded that he did not know. Indeed, Licitra admitted that he had not spoken with *any* local officials regarding approvals for the storage lot. At one point, Licitra was shown the minutes from the June 16, 2010 meeting of the zoning commission and the June 16, 2010 document approving the plaintiff to park 400 cars on the storage lot. Licitra did not challenge the authenticity or veracity of these documents. Significantly, no representative of the commissioner ever has challenged these documents, whether before the hearing officer, the trial court, or this court. Thus, the evidence suggests that the plaintiff did in fact obtain local approval, just not for the purpose of operating a used car dealership.

The commissioner nevertheless argues that § 14-54 (a) does in fact contain a licensing requirement. In support of this argument, the commissioner cites to *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, 75 Conn. App. 45, 815 A.2d 145 (2003). In that case, this court stated that "§ 14-54 requires a person who contemplates establishing a new automobile dealership in this state to obtain a state license. A state license, in turn, is conditioned upon approval of the proposed location by a local zoning board." (Footnote omitted.) Id., 46. We reject the commissioner's contention.

First, we disagree that the quoted pronouncement of this court in *Mohican Valley Concrete Corp.* is binding with respect to § 14-54 (a). The court in that case was not tasked with the meaning or requirements of § 14-54 (a). Instead, that case, as the court noted, "concern[ed] the validity of a zoning board's decision to grant such an approval." Id. That case addressed the adequacy of a zoning board's decision and whether a car dealer was entitled to a special exception to use a proposed location for a dealership. Id., 55–59. Thus, the statement concerning what § 14-54 (a) requires is dicta. "Dicta are [o]pinions of a [court] which do not embody the resolution or determination of the specific case before the court [and] [e]xpressions in [the] court's opinion which go beyond the facts before [the] court and therefore are individual views of [the] author[s] of [the] opinion and [are] not binding in subsequent cases as legal precedent." (Internal quotation marks omitted.) *Honulik* v. *Greenwich*, 293 Conn. 641, 645 n.5, 980 A.2d

845 (2009).

Second, and more importantly, the plain language of § 14-54 (a) simply does not support the commissioner's position. We disagree with the court's determination that § 14-54 "strongly implie[s]" a requirement that car dealers obtain licenses for each location[8] on which they wish to operate a car dealership. Further, whether the plaintiff was "dealing in . . . motor vehicles" without a license is irrelevant because § 14-54 (a) does not proscribe such conduct. As we previously have stated in this opinion, our inquiry in the present case is whether the plaintiff failed to obtain local approval and to present a certificate of approval to the commissioner. Because the record lacks substantial evidence to demonstrate that the plaintiff engaged in this conduct, we conclude that the determination of the hearing officer and the trial court that the plaintiff violated § 14-54 (a) cannot stand.

The judgment is reversed and the case is remanded with direction to sustain the plaintiff's appeal.

In this opinion the other judges concurred.

[1] General Statutes § 14-54 (a) provides in relevant part: "Any person who desires to obtain a license for dealing in or repairing motor vehicles in a municipality having a population of no less than twenty thousand shall first obtain and present to the commissioner a certificate of approval of the location for which such license is desired from the board or authority designated by local charter, regulation or ordinance of the town, city or borough wherein the business is located or is proposed to be located, except that in any town or city having a zoning commission, combined planning and zoning commission and a board of appeals, such certificate shall be obtained from the zoning commission. . . ."

[2] General Statutes § 14-52 (a) provides in relevant part: "No person, firm or corporation may engage in the business of the buying, selling, offering for sale or brokerage of any motor vehicle or the repairing of any motor vehicle without having been issued either a new car dealer's, a used car dealer's, a repairer's or a limited repairer's license. . . ."

[3] Bellante did not testify.

[4] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[5] On appeal, the commissioner claims that the court improperly concluded that the plaintiff did not violate § 14-52. The commissioner has failed, however, to file a cross appeal, which it was required to do, as an appellee seeking to change the judgment, pursuant to Practice Book § 61-8. See *East Windsor* v. *East Windsor Housing Ltd.*, *LLC*, 150 Conn. App. 268, 270 n.1, 92 A.3d 955 (2014) ("[i]f an appellee wishes to change the judgment in any way, the party must file a cross appeal" [internal quotation marks omitted]); see also *Akin* v. *Norwalk*, 163 Conn. 68, 70–71, 301 A.2d 258 (1972). Consequently, we will not review this claim.

[6] General Statutes § 14-51a provides: "The commissioner may, after notice and hearing, impose a civil penalty of not more than one thousand dollars on any person, firm or corporation who violates any provision of sections 14-54 to 14-67a, inclusive, or *of not more than two thousand dollars* on any person, firm or corporation who violates section 14-52." (Emphasis added.)

[7] See footnote 5 of this opinion.

[8] Although the parties have neither raised nor briefed it, we note that another provision in title 14 sets forth a licensing requirement for individual lots. See General Statutes § 14-58 (a) ("[e]ach new car dealer, used car dealer or repairer before engaging in such business shall make a separate sworn application to the commissioner for a license to engage in such business in each place of business conducted by such dealer").