******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAVERY, J., concurring in part and dissenting in part. I agree that the judgment of the trial court should be reversed in part and that the case should be remanded to the court with direction to remand the case to the defendant Zoning Board of Appeals of the City of Stamford (board) for a new hearing. Specifically, I agree that the board (1) did not lack subject matter jurisdiction to hear the application, (2) did not violate the right of the plaintiff, One Elmcroft Stamford, LLC, to fundamental fairness with its prehearing notice, (3) improperly treated the application for a certificate of approval of location (Pisano application) filed by the defendant Pisano Brothers Automotive, Inc. (Pisano Brothers),[1] as one for a variance, and (4) operated under the mistaken belief that a municipal zoning board lacks the authority to deny a location approval application when the proposed use is permitted in the zone in question. Additionally, I agree with the majority's conclusion that it "concur[s] with, and [is] bound by," this court's "settled determination" in *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, 192 Conn. App. 275, 293–97, 217 A.3d 1015 (2019), rev'd, 337 Conn. 806, 256 A.3d 151 (2021) (*Elmcroft I*), that the trial court erred by searching beyond the board's stated reason for approving the Pisano application.[2] I respectfully disagree, however, with the majority's conclusion that the board did not err by failing to distinguish a prior denial of a location approval application to operate a similar business on the property. Additionally, I believe that we must address the board's imposition of conditions on the certificate of approval when it erroneously reviewed the Pisano application under the variance standard. I, therefore, concur in part and respectfully dissent in part.

I

First, I believe that the board erred by failing to distinguish the present case from the decision in *East Coast Towing, Ltd.* v. *Zoning Board*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-10-6003028-S (March 2, 2011) (51 Conn. L. Rptr. 572) (*East Coast Towing*), which involved the same property. On remand, if the board decides to issue a certificate of approval of location for the property, I strongly believe that it must articulate on the record why it is departing from that decision.

To reiterate, in *East Coast Towing*, an applicant proposed in 2009 to use the property in the present case as a base of operations for its towing business (East Coast Towing application). Id., 572–73. After a public hearing, the Zoning Board of the City of Stamford (agency) declined to issue a certificate of approval of location.[3] Id., 573. In reaching its decision, the agency applied the

suitability standards in General Statutes (Rev. to 2003) § 14-55.[4] Id., 574.

The plaintiff applicant appealed to the Superior Court and argued in relevant part that § 14-55 had been repealed and that the agency was not permitted to consider the standards set forth in that statute when reviewing its application. Id., 573–74. The plaintiff further argued that the agency was required to approve the application once it determined that the proposed use was one permitted in the M-G general industrial zone. Id., 574. The court concluded that § 14-55 had not been repealed and dismissed the appeal after concluding that there was substantial evidence to support the reasons stated by the agency for its denial of the application. Id., 577–78.

The plaintiff in the present case maintains that the board is bound by the agency's decision on the East Coast Towing application and that it should have articulated why it departed from the prior denial when it granted the Pisano application. As part of the legal standard that the plaintiff invites this court to adopt, it argues that, on remand, the board "must either follow or expressly distinguish" the decision in *East Coast Towing*. Two cases from our Supreme Court support the plaintiff's position. First, *Hoffman* v. *Kelly*, 138 Conn. 614, 88 A.2d 382 (1952), involved an appeal from the denial by the Liquor Control Commission (commission) of the plaintiff's application for a druggist liquor permit. The commission found that the property was unsuitable because, "having considered the number of like outlets in the neighborhood, [the commission] found that the granting of a permit in this locality would have been detrimental to public interest, and because the commission was satisfied that there had been no change in the neighborhood since [its] prior denials." Id. The plaintiff appealed to the trial court, and, after hearing additional evidence and finding facts, the court sustained the appeal and ordered the commission to issue a permit to the plaintiff. See id.

On appeal to our Supreme Court, the commission argued "that its denial of the permit [was] justified under the principle of law which ordinarily renders every administrative agency impotent to reverse itself unless (1) a change of conditions has occurred since its prior decision or (2) other considerations materially affecting the merits of the subject matter have intervened and no vested rights have arisen." Id., 616–17. The court concluded that the trial court impermissibly found that there had been a change of conditions by finding its own facts and reaching its own conclusion, rather than determining, on the basis of the facts found by the commission, whether the commission's conclusion was unreasonable or illogical. See id., 617. The court noted that, to support a denial of the permit on the ground that the commission was bound by its earlier decision,

the commission needed to make findings that the conditions in the neighborhood had not changed and that there were no new considerations materially affecting the subject matter. See id. Because the commission did not make such findings, the reasons it supplied did not support its denial of the permit on the ground that it was not free to reverse its prior decision. Id. The court stated that it is for the commission to say "whether new considerations have arisen, what they are and whether they so materially change the aspect of the case that they will justify a change of decision." Id., 618. Our Supreme Court remanded the case to the trial court with direction to remand the case to the commission "to be proceeded with in accordance with law." Id.

Second, *Mason* v. *Board of Zoning Appeals*, 143 Conn. 634, 124 A.2d 920 (1956), involved an appeal from the refusal by the Board of Zoning Appeals of the City of Bridgeport (board of zoning appeals) to issue a certificate approving the plaintiff's property "as a suitable location for carrying on the business of repairing motor vehicles." Id., 635. The board of zoning appeals previously had issued to the plaintiff's brother a certificate approving the same property as a suitable location for motor vehicle repairs. Id. Five years later, the brother transferred title to the property and his interest in the business to the plaintiff. Id., 635–36. The plaintiff submitted an application to the board of zoning appeals for a certificate of approval. Id., 636. A public hearing was held on the plaintiff's application at which neighbors complained about the hours of operation of the brother's business, along with noise and fumes caused by the car repairs. Id. The board of zoning appeals also received from the Bridgeport Fire Department a report detailing hazards that existed on the premises. Id. At the conclusion of the hearing, the board of zoning appeals denied the plaintiff's application without stating in the record its reason for doing so. Id.

On appeal to our Supreme Court, the plaintiff claimed that the board of zoning appeals acted arbitrarily, illegally, and in abuse of its discretion in issuing a certificate of approval to his brother and then reversing its ruling when it declined to issue a certificate to him, even though no change of circumstances had occurred since it first approved the location. Id. Our Supreme Court, citing *Hoffman*, stated: "[A]fter an administrative agency has made a decision relating to the use of real property, it is ordinarily powerless to reverse itself, although it may do so if a change in circumstances has occurred since its prior decision, or other considerations materially affecting the merits of the subject matter have intervened and no vested rights have arisen." Id., 639. The court concluded that, because there was nothing in the record to show a change of circumstances since the prior decision of the board of zoning appeals, that entity acted illegally in reversing itself. See id.

In the present case, the defendant and Pisano Brothers argue that the board should not be bound by the agency's 2009 decision on the East Coast Towing application because, among other things, the decision was made by a different administrative agency that is a separate and independent branch of Stamford's land use department. The majority agrees with this argument.

As the majority notes, in 2009, when the hearing on the East Coast Towing application took place, General Statutes (Rev. to 2009) § 14-54 delegated to *the agency* the authority to review location approval applications and to issue certificates of approval of location. In 2016, shortly before the hearing on the Pisano application, the legislature amended § 14-54, which now delegates to *the board* the authority to review these applications and issue these certificates. See Public Acts 2016, No. 16-55, § 4. Accordingly, the majority does not address the applicability of our Supreme Court's decisions in *Hoffman* v. *Kelly*, supra, 138 Conn. 614, and *Mason* v. *Board of Zoning Appeals*, supra, 143 Conn. 634.

I strongly disagree with the majority's conclusion that "[t]he fact that the board and its members had no previous involvement, and made no determinations, with respect to the East Coast [Towing] location approval application undermines any claim that, in granting the Pisano application, the board improperly reversed itself . . . ." In reaching this conclusion, the majority states that "the agency and the board are separate municipal administrative agencies with distinct powers and duties under the city charter." The majority's emphasis on the differences between the agency and the board is misplaced and inconsequential, as it ignores that neither entity was exercising its zoning powers when it reviewed the location approval applications for the property.

For all intents and purposes, the agency and the board were the same entity when they reviewed the respective applications. Both the agency and the board acted as the agent of the Commissioner of Motor Vehicles pursuant to the power delegated to them by § 14-54. See, e.g., *New Haven College, Inc.* v. *Zoning Board of Appeals*, 154 Conn. 540, 542, 227 A.2d 427 (1967); *Dubiel* v. *Zoning Board of Appeals*, 147 Conn. 517, 520, 162 A.2d 711 (1960). In other words, the agency and the board occupied the same role, had the same powers, and were tasked with issuing the same certificate pursuant to the same statute. Thus, I do not see a distinction between the entities in this context, and I believe that the agency's prior decisions on location approval applications should have precedential value.

Because of the majority's holding, zoning boards of appeal can now ignore all location approval decisions made by other land use agencies prior to 2016. For example, if the owner of an automobile repair shop, which received its certificate of approval from a munici-

pality's planning and zoning commission prior to 2016, transfers ownership of the business to an unrelated party, that party would need to seek approval from the municipality's zoning board of appeals. When reviewing the party's application, the zoning board of appeals will not be bound by the planning and zoning commission's prior decision on the location, and it can deny the new owner's application even if no change in circumstances has occurred. Thus, allowing boards of appeals to reverse the decisions of other land use agencies without providing justification could lead to inconsistent and unpredictable results for future property owners. Furthermore, in the present case, the Superior Court upheld the agency's denial of the East Coast Towing application. That the court upheld a decision disapproving the location of the same property only adds to the precedential value of the agency's decision.

If, on remand, the board decides to issue a certificate of approval on the Pisano application, I believe that it must also articulate whether a change in circumstances has occurred since the agency's decision on the East Coast Towing application. The board should develop a record that supports its decision, as a reviewing court will not be able to supply its own reasons to uphold this decision. I am not suggesting that the board *cannot* reverse the agency's prior decision regarding the property. Rather, if the board issues a certificate of approval on remand, I simply believe that it must state on the record its reasons for departing from the prior decision.

## II

I also take issue with the majority's failure to address the board's imposition of conditions on the certificate of approval when it erroneously reviewed the Pisano application under the variance standard. The board attached fourteen conditions to its certificate of approval of the Pisano application. The trial court did not address the issue of whether the board had the authority to attach those conditions, even though the proposed use of the property was fully permitted in the M-G zone in which the property is located. On appeal, neither party specifically challenges the board's authority to attach those conditions. I believe that this issue, however, is subsumed within the plaintiff's broader claim that the board erred by treating the Pisano application as one for a variance. Put differently, the board attached conditions to the certificate of approval *because* it impermissibly reviewed the Pisano application as if it were an application for a variance.

"In general terms, conditions may be attached to variances, special permits, site plans . . . and regulated activities permits." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 21:14, p. 680. There exist statutes that permit municipal zoning agencies to impose conditions on applicants in certain situations. See, e.g., General Statutes § 8-2

(a) (special permits granted by zoning agency may be subject "to conditions necessary to protect the public health, safety, convenience and property values"); General Statutes § 22a-42a (d) (1) (inland wetlands agency may impose conditions on permit to conduct regulated activity). Section 14-54, however, grants municipal land use agencies only the power either to issue or decline to issue certificates of approval of the locations for which licenses are sought. The statute does not explicitly give these agencies the power to attach conditions to the certificates of approval that they issue. In the present case, as I previously have noted, the board was acting as an agent of the Commissioner of Motor Vehicles and, therefore, could act only with the powers delegated to it by § 14-54.

I recognize that in *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, 75 Conn. App. 45, 48, 815 A.2d 145 (2003), a zoning board of appeals attached conditions to its certificate of approval. Pursuant to the local zoning regulations, "the approval took the form of granting the [applicants] a special exception." Id., 47. Thus, the zoning regulations are what provided the zoning board of appeals with the authority to attach conditions to the applicants' use of the property. Furthermore, in upholding the decision of the zoning board of appeals, this court noted that "the board might have taken account of the willingness of the defendants to accept a certificate of approval with conditions designed to mitigate some of the concerns raised by the plaintiffs." Id., 62.

In the present case, however, the proposed use of the property is permitted as of right in the M-G zone in which the property is located. Thus, there are no independent zoning regulations that permitted the board to attach conditions to its approval. Furthermore, my review of the hearing transcript reveals that, unlike the situation in *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 62, neither the defendant nor his counsel agreed to several of the fourteen conditions listed in the board's written decision. For example, the board imposed restrictions on parking, vehicle storage, and equipment storage that were not expressly discussed at the hearing.

I also recognize that there is a Department of Motor Vehicles form titled "application for automobile dealer's or repairer's license" that suggests that the board in the present case was permitted to restrict the use of the property when it issued its certificate of approval.[5] Section 2 of this form, which is to be completed "by local authorities of the city . . . in which the location is proposed," asks: "Are there any restrictions placed on the licensee's use of the property?" If the local authority that completes the form answers in the affirmative, it must attach a copy of the restrictions that it has imposed on the licensee. This form, however, does

not provide any explanation for when a local zoning authority can impose "restrictions" on its approval of an application. For example, this section could apply in situations in which, as in *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 47 n.4, 48 and n.7, local zoning regulations permit a local zoning authority to attach conditions to an applicant's use of a property. In the absence of any statutory language granting local zoning authorities the authority to restrict a licensee's use of a property when issuing a certificate of approval, simply including this question on the form does not mean that local zoning authorities possess such statutory authority.

In the present case, it is apparent that the board attached conditions to its certificate of approval because it acted as though it was reviewing a variance request under the Stamford zoning regulations. Accordingly, I believe that the majority's failure to address the board's attachment of conditions to the certificate is inconsistent with its conclusion that "the board improperly applied the legal standard that governs variance approvals under the regulations." These two errors inextricably are tied together. By not addressing whether the board could have attached conditions to the certificate of approval, the majority has invalidated the underlying error of the board while leaving intact a result of its error. On remand, if the board decides to approve the Pisano application, I do not believe that it can attach conditions to its approval because (1) it does not have the statutory authority to do so, and (2) there are no zoning regulations that independently provide the board with this authority.

For the foregoing reasons, I concur in part and respectfully dissent in part.

[1] Where necessary, I will refer to Pisano Brothers Automotive, Inc., as Pisano Brothers and to the defendant Pasquale Pisano as the defendant.

[2] As this court noted in *Elmcroft I*, the trial court's review of the board's decision was governed by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 279; see also *Vicino* v. *Zoning Board of Appeals*, 28 Conn. App. 500, 504–505, 611 A.2d 444 (1992). Thus, because the board stated on the record its reasons for approving the application, the trial court could not look beyond those reasons to uphold the board's decision. See, e.g., *Azzarito* v. *Planning & Zoning Commission*, 79 Conn. App. 614, 618, 830 A.2d 827 ("[w]hen a [board] states its reasons in support of its decision on the record, the court goes no further, but if the [board] has not articulated its reasons, the court must search the entire record to find a basis for the [board's] decision" (internal quotation marks omitted)), cert. denied, 266 Conn. 924, 835 A.2d 471 (2003).

[3] In its resolution disapproving the application, the agency made the following findings:

"1. The subject property is already intensively used for a 24/7 tow truck operation with the stated intention to keep ten (10) tow trucks on the property;

"2. David M. Emerson, Executive Director of the Environmental Protection Board, has recommended that a traffic operations and management plan be provided to demonstrate that tow trucks and vehicles will not be staged and queued on the city street. Mr. Emerson concludes that the use will have a significant impact on the character of the site and surroundings resulting from the need to park tow trucks on call and to move and store cars awaiting release to their owners.

"3. Howard J. Weissberg, P.E., Senior Transportation Engineer, Tighe &

Bond, has submitted a review of traffic, parking and safety issues and notes that only one parking space is available to support used car inventory, customer parking and tow truck parking. Mr. Weissberg further reports that due to the size of the lot and building there is limited traffic circulation and the potential for on-street parking and the back out of trucks and vehicles, creating a potential conflict with traffic flow and safety concerns on Elmcroft Road.

"4. Significant concerns for safety of neighborhood children and nuisance conditions and diesel fumes from the 24/7 towing and repair operations was expressed by residents and owners of adjacent residential properties, elected officials and representatives of the South End Neighborhood Revitalization Zone.

"5. The South End is rapidly becoming more residential in character, with an estimated 4,000 new housing units and major public parks planned immediately north and west of the subject property." (Internal quotation marks omitted.) *East Coast Towing, Ltd.* v. *Zoning Board*, supra, 51 Conn. L. Rptr. 574.

[4] All references to § 14-55 in this opinion are to the 2003 revision of the General Statutes.

[5] This form is to be submitted to the Department of Motor Vehicles after a hearing on an application has taken place and a local zoning authority has issued a certificate of approval of a proposed location.