******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ONE ELMCROFT STAMFORD, LLC *v.* ZONING
BOARD OF APPEALS OF THE CITY
OF STAMFORD ET AL.
(AC 41208)

Elgo, Moll and Lavery, Js.

*Syllabus*

The plaintiff appealed to the Superior Court from the decision by the defen-
dant Zoning Board of Appeals of the City of Stamford granting the
application of the defendant P, filed on behalf of the defendant P Co.,
for approval for the location of an automotive repair business on certain
real property. The board had referred P Co.'s application to the city's
Planning Board and Engineering Bureau for comment. The Planning
Board recommended that the application be denied. The Engineering
Bureau did not object to the application but expressed various concerns.
The board thereafter published notice of a public hearing on the applica-
tion, which stated that P Co. sought to operate a used car dealership
on the property. The board approved the application subject to certain
conditions, which included concerns expressed by the Engineering
Bureau. The plaintiff, which owned property that abutted the site at
issue, claimed, inter alia, that the board failed to conduct a suitability
analysis, as required by statute ([Rev. to 2003] § 14-55). The Superior
Court concluded that the board had given due consideration to the
suitability of the property and rendered judgment denying the appeal.
The plaintiff then appealed to this court, which concluded that the
General Assembly had not repealed § 14-55 in 2003, and reversed the
Superior Court's judgment and remanded the case for further proceed-
ings. The defendants then appealed to the Supreme Court, which deter-
mined that the General Assembly had repealed § 14-55 in 2003 and
reversed in part this court's judgment and remanded the case to this
court to consider the plaintiff's remaining claims. *Held*:

1. The plaintiff's claim that the notice of the public hearing on P Co.'s
   application was defective and, thus, deprived the board of jurisdiction
   to consider the application, was unavailing; because the legislature has
   not enacted a proper substitute for § 14-55, which had set forth the
   requirements for prehearing notice regarding location approval applica-
   tions, the board could not have lacked jurisdiction to hear the applica-
   tion, as it was not statutorily required to provide such notice at the time
   P Co. filed its application in 2016.

2. The plaintiff could not prevail on its contention that the board violated
   its right to fundamental fairness because the notice of the public hearing
   was misleading in that it did not sufficiently describe P Co.'s intended
   use of the property: although the notice stated that the property would
   be used for the sale of used cars, P clarified at the public hearing that,
   although used cars occasionally would be sold on the property, the
   primary intended use of the property was for general automotive repair,
   and, because the applicable zoning regulation (§ 19.A.3.b) referred to
   the statute (§ 14-54) applicable to the board's authority to hear and
   decide location approval applications, the defendants sufficiently
   apprised the plaintiff of the proposed use of the property, as the statutory
   (§ 14-51 (a) (2)) definition of used car dealer, which encompassed auto-
   motive repair and used car sales, accurately described the proposed
   use of the property; moreover, in accordance with the applicable zoning
   regulation (§ 20.B.1), the board provided written notice of the public
   hearing to all owners of property, including the plaintiff, within the
   applicable boundary area of the property at issue, which described the
   proposed use of the property as automotive repair and used car dealer.

3. The board applied an incorrect legal standard in ruling on P Co.'s location
   approval application and mistakenly believed it could not deny such
   application because the proposed use was permitted in the zone at
   issue: the board's collective statement of its basis for granting P Co.'s
   application expressly applied the legal standard under the regulation
   (§ 19.B.2.a (2)) that governs variance approvals rather than § 19.A.3.b,
   which is applicable to location approval applications; moreover, the

board's assertion that its error was merely clerical was belied by the record, which demonstrated that it exceeded its statutory authority and its authority under § 19.A.3 when it referred P Co.'s application to the city's engineering and planning agencies, and, as the board was required by § 19.A.3 to hear and decide the application, its error in treating the application as a variance request was exacerbated by the terms of its approval, which required P Co. to comply with all concerns articulated by the Engineering Bureau; furthermore, because the members of the board were obligated as agents of the state to make a determination in reviewing P Co.'s location approval application, they were mistaken in their belief that they lacked the authority to deny the application because P Co.'s proposed use was permitted in the zone at issue.

4. The board did not commit an error of law by failing to distinguish the denial by a different municipal entity seven years earlier of a location approval application for a different business to operate a used car dealership on the property at issue; the plaintiff's reliance on the "impotent to reverse" rule, which precludes a municipal agency from revisiting its prior decisions and revoking its duly enacted action, was unavailing because the board did not make any prior determinations or render a decision on the earlier application, as that denial was rendered by a different municipal entity that, at that time, had powers and duties distinct from those of the board, and P Co.'s application was filed after the legislature's amendment (Public Acts 2016, No. 16-55, § 4) of § 14-54, which transferred from that different municipal entity to the board the authority to act on location approval applications.

(*One judge concurring in part and dissenting in part*)

Argued September 13, 2021—officially released June 14, 2022

*Procedural History*

Appeal from the decision by the named defendant granting the application of the defendant Pisano Brothers Automotive, Inc., et al. for approval to locate an automotive repair business on certain real property, brought to the Superior Court in the judicial district of New Britain and transferred to the judicial district of Stamford-Norwalk, where the case was tried to the court, *Hon. Taggart D. Adams*, judge trial referee; judgment denying the plaintiff's appeal, from which the plaintiff appealed to this court, *Sheldon*, *Elgo* and *Lavery*, *Js.*, which reversed the trial court's judgment and remanded the case to that court for further proceedings, and the defendant Pasquale Pisano et al., on the granting of certification, appealed to the Supreme Court, which reversed this court's judgment and remanded the case to this court for further proceedings. *Reversed in part*; *further proceedings*.

*Jeffrey P. Nichols*, with whom was *Amy Souchuns* and, on the brief, *John W. Knuff*, for the appellant (plaintiff).

*Gerald M. Fox III*, for the appellees (defendant Pasquale Pisano et al.).

*Opinion*

ELGO, J. This administrative appeal returns to us on remand from our Supreme Court. *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, 337 Conn. 806, 256 A.3d 151 (2021) (*Elmcroft II*). In *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, 192 Conn. App. 275, 283–89, 217 A.3d 1015 (2019) (*Elmcroft I*), rev'd, 337 Conn. 806, 256 A.3d 151 (2021), this court concluded, inter alia, that General Statutes (Rev. to 2003) § 14-55[1] had not been repealed and required the defendant Zoning Board of Appeals of the City of Stamford (board) to consider the suitability of the location in question as a prerequisite to the granting of a certificate of location approval in accordance with General Statutes § 14-54. Following its grant of certification to the defendants, Pisano Brothers Automotive, Inc., and Pasquale Pisano; see *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, 333 Conn. 936, 218 A.3d 594 (2019); the Supreme Court concluded, as a matter of law, that § 14-55 had been repealed by Public Acts 2003, No. 03-184, § 10. See *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 809–10. The court thus reversed the judgment of this court and remanded the matter to us with direction to consider the remaining claims of the plaintiff, One Elmcroft Stamford, LLC. See id., 826.

In accordance with that order, we now consider whether the Superior Court properly rejected the plaintiff's claims that the board (1) lacked subject matter jurisdiction to hear the application due to defective legal notice, (2) violated the plaintiff's right to fundamental fairness in administrative proceedings, (3) applied an improper legal standard in granting the certificate of location approval, and (4) failed to "consider or distinguish" a prior denial of a certificate of approval application for the location in question. We affirm in part and reverse in part the judgment of the Superior Court.

The relevant facts are largely undisputed. On June 1, 2016, Pisano Brothers Automotive, Inc., entered into a lease for a 6500 square foot parcel of real property known as 86 Elmcroft Road (property), which is located in the "M-G General Industrial District" in Stamford.[2] On that same date, Pisano, acting on behalf of Pisano Brothers Automotive, Inc., applied for a "used car dealer" license from the Department of Motor Vehicles (department).[3] In that application, Pisano listed himself as vice president of Pisano Brothers Automotive, Inc.

Pursuant to § 14-54, "[a]ny person who desires to obtain a license for dealing in or repairing motor vehicles" must first obtain "a certificate of approval of the location for which such license is desired" (location approval) from the applicable municipal zoning agency, which, in this case, was the board. In accordance with that statutory imperative, Pisano filed an application

with the board for a location approval on July 14, 2016 (Pisano application),[4] on a preprinted form furnished by the board. The first page of that form asks applicants to provide the requested information "in ink" and then lists boxes for five distinct applications: "Variance(s)," "Special Exception," "Appeal from Decision of Zoning Enforcement Officer," "Extension of Time," and "Motor Vehicle"; Pisano checked "Motor Vehicle." Pisano then provided handwritten details regarding the location of the property, the owner of the property, and the applicant on page one of the form.

The second page of the application form contains a section titled "VARIANCES" and directs applicants to "complete this section *for variance requests only*. See a Zoning Enforcement Officer for help in completing this section." (Emphasis added.) Unlike the information provided on page one of the application, which is set forth in an upright block script, the variance section on page two contains the following in a strikingly larger and italicized cursive script: "APA TAB II #55 to allow a used car dealer to be located in an MG zone."[5] Although it is unclear from the record exactly who made that notation on the application form, Pisano explained at the subsequent public hearing that, in preparing the application, he had met with the city's land use officials, including the zoning enforcement officer, who worked with him to complete the application. That testimony is confirmed by the fact that the variance section of the application submitted by Pisano is stamped "ZONING ENFORCEMENT APPROVAL For Submission to Zoning Board of Appeals" and contains the signature of that official.[6]

Section 19.B of the Stamford Zoning Regulations (regulations) governs variance applications, and § 19.B.1 memorializes the board's "power after public notice and hearing to determine and vary the application of these regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values."[7] Notably, § 19.B.3.d authorizes the board to refer variance applications to the Stamford Planning Board, which, "in reviewing such matters, shall set forth its opinion as to whether or not the proposed use or feature is in reasonable harmony with the various elements and objectives of the Master Plan and the comprehensive zoning plan . . . ." Stamford Zoning Regs., § 19.B.3.d (2). The regulations also authorize the board to refer variance applications "to other [a]gencies." Stamford Zoning Regs., § 19.B.3.e.

Upon receiving the Pisano application, the board referred it to other Stamford land use agencies "[i]n accordance with [§] 19 of the [regulations]," including the Planning Board and the Engineering Bureau. Those referrals expressly sought "comments" on what the board labeled a variance request.[8]

In a subsequent correspondence dated August 4, 2016, the Engineering Bureau informed the board that it had "reviewed plans for a variance to allow for a used car dealer to be located in the M-G Zone" and that it "has found the [proposed use] will not result in any adverse drainage impacts as there will be no increase in impervious coverage." The Engineering Bureau thus indicated that it "does not object to [the Pisano] application proceeding with the approval process with the following condition: New concrete curb and sidewalk shall be installed along the frontage of the property." The Engineering Bureau concluded by noting that "[c]urrently there is no sidewalk at this location and adjacent properties are equipped with sidewalks. Measures shall be taken to prevent vehicles from parking within the City [right-of-way]."

The board also received a letter from the Planning Board dated September 8, 2016, which stated that it had reviewed the Pisano application "in accordance with the provisions of the Stamford Zoning Regulations." The letter continued: "The Planning Board unanimously recommended *DENIAL* of [the Pisano application]. It is the opinion of the [Planning] Board that the proposed application does not keep with the character of the neighborhood and finds these requests are not consistent with the 2015 Master Plan Category #9 (Urban Mixed-Use)."[9] (Emphasis in original.)

The board scheduled a public hearing on the Pisano application and published legal notice in a local newspaper on September 1 and 7, 2016.[10] The board then held the public hearing on the Pisano application on September 14, 2016. At its outset, Chair Claire D. Friedlander read the correspondence from the Engineering Bureau and the Planning Board into the record, which began by noting that the Engineering Bureau "has reviewed the plans for a variance to allow for a used car dealer to be located in the MG zone . . . ."[11]

Attorney Gerald M. Fox III then appeared on behalf of the applicant and explained that Pisano Brothers Automotive, Inc., had been in business as an automobile repair shop in Stamford for more than twenty years. Fox further indicated that "[t]he used car dealer aspect of this application is not one that is something that [the applicant] uses very often . . . . [Pisano Brothers Automotive, Inc.] probably sells . . . less than five [cars] a year." Pisano also appeared at the hearing and stated that, although there would be occasional used car sales, the primary business conducted on the property would be general automotive repair.[12] Pisano confirmed that the property contained a total of six parking spaces, as depicted on an "improvement location survey" that he submitted to the board. Pisano also confirmed that his business provided towing services for its customers "from eight [a.m.] to five [p.m.]" but was "not triple AAA." Pisano acknowledged that a tow truck would be

stored inside the existing building on the property.

At the hearing, multiple board members raised public safety concerns in light of the limited parking available on the 6500 square foot property. For example, prior to opening the floor for public comment, Friedlander emphasized to the applicant that, "we've had tow truck issues in this neighborhood over the years, and I think that's why we have people who are concerned about that. Tow trucks have been over the streets. They haven't been [stored completely] on the property, and there's a real concern that there's not—that's why you're getting the questions that you're getting . . . . [I]f [the Pisano application is] going to be approved, there has to be some kind of blood faith oath that nothing will be [parked] off the property at any time." Another board member, John A. Sedlak, expressed his concern that, when he recently visited the property, "there were ten cars parked in front—well, actually, eleven cars—[and] the parking lot was totally full. There was one car parked out on [a] sidewalk so you couldn't—you had to go out and walk out in the street." Sedlak then asked who was "storing all these cars there," to which Pisano replied, "I am." Sedlak responded, "Well, you're parking a car on the sidewalk right now." When Friedlander asked Pisano if he would "be comfortable with a limitation [on the number of] cars on the outside of the property at any time," Fox responded, "[t]hat's no problem, yes," and Pisano agreed, stating, "[w]e could do that."

During the public comment portion of the hearing, the board heard from John Darosa, a neighbor who resided at 62 Elmcroft Road. Darosa began his remarks by stating in relevant part: "I am totally against the proposal. A few years ago, East Coast Towing wanted that building. They wanted to lease [the property], and we had some serious concerns as residents. . . . I'm hearing some of the same things tonight that I heard with East Coast Towing. I don't know if there's any kinfolk or not with this operation and East Coast Towing, but it seems like it's pretty much the same type of thing." Darosa contrasted the property with other businesses in the area, noting that those properties were "secluded" from the "main roads" and were not "eyesores . . . ." Darosa noted that parking was "a mess" on the property and that it "looks terrible," emphasizing that the sidewalk "disappears" in front of the property. Darosa thus opined that, "to put a car dealership [on the property], whether he's bringing in ten cars or fixing . . . cars, there's no way to hide them. The property is too small, at least that's what I think, and we went over this with East Coast Towing a few years ago and I think you guys realized that. . . . [I]t's just not a fit for the area."

The board also heard from Stamford resident Al Sgritta, who noted that cars were being stored on a

property on Taff Avenue that was "not being attended to by the local authorities. They just came to look the other way. And I'm sure the same thing [will occur on the property] with vehicles being stored and towing trucks being stored. And you said, well, it's just there temporarily, and it's temporarily every day. . . . [W]hat will happen there on [the property] is a strong possibility."

When public comment concluded, Fox addressed the board and emphasized that the property was located in the M-G zone. He continued: "A lot of things can go there as of right because of the way the state of Connecticut has chosen to deal with used car dealers and car repair, [so] *this board does have to approve* the location." (Emphasis added.) At the same time, Fox stated that the board had "the opportunity to put some limitations on what [the applicant] can do that, hopefully, will alleviate some of the concerns that you've heard tonight," and then noted several potential conditions that the board could attach to its approval. In his comments, Pisano likewise indicated that he was open to the board's attaching conditions to its approval and emphasized that the property was in the M-G zone, where an automobile repair business is a permitted use. After Pisano concluded his remarks, the public hearing was closed.

When deliberations on the Pisano application began, board member Georgiana White stated in relevant part: "I feel that this has been made more complicated than it is. . . . Because there's a misunderstanding, perfectly understandable but, nonetheless, a misunderstanding, a misconception . . . . I don't think the neighbors really understand it, but the key here, to me . . . is [that the property is in] an MG zone, and there are businesses that can move in tomorrow that would not appear here." White further opined that the "only reason" the applicant was before the board was because of the "label" of its business as a car repair shop. White also noted that what she saw as "advantageous" was that the board had "the opportunity to try to make it even more acceptable to the neighborhood here" by attaching certain conditions to its approval. In his remarks, Sedlak agreed with White that the board's hands were tied in light of the fact that an automobile repair business was a permitted use in the M-G zone under the regulations. As he stated, "unfortunately, this . . . property is a lousy property for a repair shop, terrible. . . . It's lousy, but it's permitted."[13] Board member Nino Antonelli similarly stated that "this is a good opportunity [to] improve the building [on the property]. . . . Because again, it's an MG zone. Anybody can move in."

After discussing various conditions of approval, the board granted the location approval subject to fourteen detailed conditions. The board's certificate of decision, which was signed by Friedlander and recorded on the

Stamford land records, contained an explicit "statement of its findings and approval," which states: "The board finds . . . [t]hat the aforesaid circumstances of conditions is/are such that the strict application of the provisions of these [r]egulations would deprive the [applicant] of the reasonable use of such land or building(s) and the granting of the application is necessary for the reasonable use of the land or building(s). The [b]oard GRANTS a Motor Vehicle approval of Table II, Appendix A, #55 (Auto Sales Requirements) of the Zoning Regulations in order to allow a Used Car Dealer to operate and be located in an [M-G] zone." The board attached fourteen conditions to its approval, which it characterized as "restrictions" in its certificate of decision.[14]

At all relevant times, the plaintiff was the owner of abutting property at 126 Elmcroft Road. Following the board's decision to grant the location approval application, the plaintiff commenced an administrative appeal in the Superior Court pursuant to General Statutes §§ 14-57 and 4-183.[15] The plaintiff claimed, inter alia, that the board (1) lacked subject matter jurisdiction to hear the Pisano application due to defective legal notice, (2) violated its right to fundamental fairness in administrative proceedings, (3) "acted illegally, arbitrarily, and in abuse of discretion" by applying an improper legal standard to the location approval request, and (4) failed "to consider or distinguish the Zoning Board's decision, dated December 14, 2009, that the [p]roperty was unsuitable for use as a used car dealership." The court, *Hon. Taggart D. Adams*, judge trial referee, rejected the plaintiff's claims and concluded that substantial evidence existed to support the board's decision. From that judgment, the plaintiff appealed to this court.

I

We first consider the plaintiff's claim that the board lacked subject matter jurisdiction to hear the Pisano application due to an alleged defect in the prehearing notice published in a local newspaper. It is well established that "subject matter jurisdiction is a threshold matter that we must resolve in order to address [a party's] other claims." *In re Joshua S.*, 260 Conn. 182, 191 n.11, 796 A.2d 1141 (2002). A determination regarding subject matter jurisdiction presents a question of law, over which our review is plenary. See, e.g., *Vitale* v. *Zoning Board of Appeals*, 279 Conn. 672, 678, 904 A.2d 182 (2006).

Not all claims of improper notice are jurisdictional in nature. See, e.g., *Lauer* v. *Zoning Commission*, 220 Conn. 455, 462, 600 A.2d 310 (1991) (failure to give personal notice to specific individual not jurisdictional defect); *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, 75 Conn. App. 45, 52, 815 A.2d 145 (2003) (emphasizing that "notice requirements may be jurisdictional"). At the same time, our Supreme Court has "long held that failure to give newspaper notice is a subject

matter jurisdictional defect . . . . Noncompliance with the statutory requirement of public notice invalidates the subsequent action by the zoning board . . . ." (Citations omitted.) *Koepke* v. *Zoning Board of Appeals*, 223 Conn. 171, 175, 610 A.2d 1301 (1992); see also *Wright* v. *Zoning Board of Appeals*, 174 Conn. 488, 491, 391 A.2d 146 (1978) ("[c]ompliance with prescribed notice requirements is a prerequisite to a valid action by a zoning board of appeals and failure to give proper notice constitutes a jurisdictional defect"); *Koskoff* v. *Planning & Zoning Commission*, 27 Conn. App. 443, 447, 607 A.2d 1146 ("[s]trict compliance with statutory mandates regarding notice to the public is necessary"), cert. granted, 222 Conn. 912, 608 A.2d 695 (1992) (appeal withdrawn November 10, 1992); R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 46:1, p. 3 ("[c]ompliance with the statutory requirement as to notice of the public hearing is a prerequisite to valid action by the agency"). Our analysis begins, therefore, with the statutory notice requirements for location approval applications.

As this court has observed, § 14-55 set forth "the jurisdictional requirements for a prehearing notice" regarding location approval applications.[16] *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 52. The General Assembly, however, repealed that statute in 2003; see *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 809; and it has not enacted a proper substitute of any kind.[17] As a result, no statutory notice requirements have existed for location approval applications filed pursuant to § 14-54 in the nearly nineteen years since § 14-55 was repealed.

When Pisano filed his application for a location approval in 2016, the board was not statutorily obligated to provide notice of the public hearing on that application. A fortiori, the board could not have lacked subject matter jurisdiction over the Pisano application due to noncompliance with statutory notice requirements.

## II

The plaintiff alternatively argues that, even if the board had subject matter jurisdiction to hold a public hearing on the Pisano application, it violated the plaintiff's right to fundamental fairness by insufficiently describing the proposed use of the property in its prehearing notice. We do not agree.

The procedural right involved in administrative proceedings properly is described as the right to fundamental fairness, as distinguished from the due process rights that arise in judicial proceedings. *Grimes* v. *Conservation Commission*, 243 Conn. 266, 273 n.11, 703 A.2d 101 (1997). "While proceedings before [administrative agencies] are informal and are conducted without regard to the strict rules of evidence . . . they cannot

be so conducted as to violate the fundamental rules of natural justice. . . . Fundamentals of natural justice require that there must be due notice of the hearing . . . ." (Citations omitted; internal quotation marks omitted.) *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 608, 942 A.2d 511, cert. denied, 289 Conn. 901, 957 A.2d 871 (2008). Whether the right to fundamental fairness has been violated in an administrative proceeding is a question of law over which our review is plenary. See id. Moreover, "the burden of proving that the notice was defective rests on the persons asserting its insufficiency." *Peters* v. *Environmental Protection Board*, 25 Conn. App. 164, 170, 593 A.2d 975 (1991).

As this court observed in a case involving a location approval application, "the purpose of a prehearing notice is to permit members of the general public to prepare intelligently for a public hearing at which they may be heard about the merits of a pending application. . . . [I]mperfections in the contents of a notice do not automatically deprive a zoning board of the authority to act on an application. A notice is not misleading even though it does not describe the proposed action in detail or with exactitude. . . . Presumably, our courts have allowed zoning boards and administrative agencies some latitude with respect to such defects so as to avoid the harsh consequences of a jurisdictional defect, which permits a disappointed litigant to question a zoning board decision long after board proceedings have concluded . . . ." (Citations omitted; internal quotation marks omitted.) *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 52–53. "A notice is proper . . . if it fairly and sufficiently apprises the public of the action proposed, making possible intelligent preparation for participation in the hearing." *Cocivi* v. *Plan & Zoning Commission*, 20 Conn. App. 705, 708, 570 A.2d 226, cert. denied, 214 Conn. 808, 573 A.2d 319 (1990).

The prehearing notice published in the local newspaper stated in relevant part that a public hearing would be held on the Pisano application "for a [m]otor [v]ehicle approval of Table II, Appendix A, #55 (Auto Sales Requirements) of the [regulations] in order to allow a [u]sed [c]ar [d]ealer to operate and be located in an MG zone. . . ." See footnote 10 of this opinion. At the public hearing, Pisano clarified that the primary intended use of the property was not used car sales, but general automotive repair. In light of that admission, the plaintiff contends that the legal notice provided by the board was misleading, as it did not sufficiently describe the intended use of the property.

As this court has noted, "zoning boards of appeal are creatures of statute" that "possess a limited authority, as circumscribed by statute, the scope of which cannot be enlarged or limited by either the board or the local zoning regulations." *Komondy* v. *Zoning Board of*

*Appeals*, 127 Conn. App. 669, 679, 16 A.3d 741 (2011). The municipal regulations here specify the limited duties of the board, which include review of location approval applications. See Stamford Zoning Regs., § 19.A.3. With particular respect to "Dealers' and Repairers' Licenses," the regulations refer to § 14-54 and recognize the board's authority to "hear and decide" location approval applications in accordance therewith. Stamford Zoning Regs., § 19.A.3.b. That authority derives exclusively from title 14, chapter 246, part III (d) of the General Statutes, which governs the issuance of dealers' and repairers' licenses in this state.

Significantly, that statutory scheme delineates only four types of licensees—"[n]ew car dealer, "[u]sed car dealer," "[r]epairer," and "[l]imited repairer."[18] General Statutes § 14-51. For licensing purposes, a repairer is defined as "any person, firm or corporation qualified to conduct such business in accordance with the requirements of [§] 14-52a, having a suitable facility and having adequate equipment, engaged in repairing, overhauling, adjusting, assembling or disassembling any motor vehicle, but shall exclude a person engaged in making repairs to tires, upholstering, glazing, general blacksmithing, welding and machine work on motor vehicle parts when parts involving such work are disassembled or reassembled by a licensed repairer." General Statutes § 14-51 (a) (3). By contrast, a used car dealer is defined in relevant part as "any person, firm or corporation engaged in the business of merchandising motor vehicles other than new who may, incidental to such business, repair motor vehicles."[19] General Statutes § 14-51 (a) (2). In light of the undisputed fact that the applicant's intended use of the property included *both* general automotive repairs and the sale of used cars, the latter definition more accurately describes that proposed use, as it encompasses both automotive repair and used car sales.[20]

Furthermore, it is undisputed that, in addition to the legal notice that the board published in a local newspaper, the applicant provided written notice of the public hearing to all owners of property within "100 feet . . . of the boundary area" of the property—including the plaintiff—in accordance with § 20.B.1 of the regulations. In that notice, the applicant described the proposed use of the property as follows: "Automotive repair/used car dealer." The record contains a certificate of mailing from the United States Postal Service, which indicates that the applicant mailed that notice to the plaintiff on September 2, 2016, almost two weeks prior to the public hearing.[21] At no time has the plaintiff alleged that it did not receive that written notice or description of the proposed use of the property.

In light of the foregoing, we conclude that the applicant sufficiently apprised the plaintiff of the proposed use of the property. The plaintiff, therefore, cannot establish a violation of its right to fundamental fairness.

## III

We turn next to the plaintiff's contention that the board applied an improper legal standard in granting the certificate of location approval. Because that claim involves a question of law, our review is plenary. See *St. Joseph's High School, Inc.* v. *Planning & Zoning Commission*, 176 Conn. App. 570, 586–87, 170 A.3d 73 (2017).

## A

Before considering the specific claims advanced by the plaintiff, additional context is necessary. Under Connecticut law, the approval of the proposed location by a municipal zoning board is a prerequisite to the issuance of a state license to deal in or repair motor vehicles. See General Statutes § 14-54; *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 45. When a municipal zoning board reviews a location approval application pursuant to § 14-54, it acts as "a special agent of the state." *Vicino* v. *Zoning Board of Appeals*, 28 Conn. App. 500, 504, 611 A.2d 444 (1992). As the Supreme Court explained, "[i]n receiving and hearing and, eventually, in denying the application, the [municipal zoning board] was not functioning under either the municipal zoning ordinance or the zoning statutes. . . . It was acting in a special capacity. It was serving as the local agency named by the General Assembly to determine whether a certificate of approval should be issued." (Citations omitted.) *Mason* v. *Board of Zoning Appeals*, 143 Conn. 634, 637, 124 A.2d 920 (1956); see also *Sun Oil Co.* v. *Zoning Board of Appeals*, 154 Conn. 32, 35, 221 A.2d 267 (1966) ("[o]btaining a certificate of approval . . . is not a zoning matter"); *Dubiel* v. *Zoning Board of Appeals*, 147 Conn. 517, 520, 162 A.2d 711 (1960) (when acting on location approval application, "the board is not dealing primarily with zoning but is performing a separate function delegated to it as an agency of the state"); *Charchenko* v. *Kelley*, 140 Conn. 210, 213, 98 A.2d 915 (1953) ("the determination of the propriety of utilizing the plaintiff's premises as a location for his proposed business is an administrative matter").

Because it is acting as an "agent of the state," a municipal zoning board "must follow the statutory criteria in determining whether to issue the certificate of approval." *Vicino* v. *Zoning Board of Appeals*, supra, 28 Conn. App. 505; accord *Mason* v. *Board of Zoning Appeals*, supra, 143 Conn. 637–38 (explaining that "[i]t is to [the General Statutes], then, that we must turn to find the test for the [municipal zoning board] to apply in reaching its determination" on location approval application and emphasizing that zoning board "could legally go no further than to apply the test incorporated in the statute"). For more than one-half century, location approval applications were evaluated pursuant to a stat-

utory standard that required consideration of the suitability of the location in question, as most recently codified in § 14-55. See, e.g., *New Haven College, Inc.* v. *Zoning Board of Appeals*, 154 Conn. 540, 542–43, 227 A.2d 427 (1967); *Atlantic Refining Co.* v. *Zoning Board of Appeals*, 142 Conn. 64, 66, 111 A.2d 1 (1955); *Colonial Beacon Oil Co.* v. *Zoning Board of Appeals*, 128 Conn. 351, 354, 23 A.2d 151 (1941). Pursuant to that statutory standard, a municipal zoning agency was not permitted to grant a location approval unless "such location has been found suitable for the business intended, with due consideration to its location in reference to schools, churches, theaters, traffic conditions, width of highway, and effect on public travel." (Internal quotation marks omitted.) *Vicino* v. *Zoning Board of Appeals*, supra, 505. As our Supreme Court noted, "the language of the statute [was] explicit in stating what the board [was] to consider when it acts on an application." *New Haven College, Inc.* v. *Zoning Board of Appeals*, supra, 543.

In light of the legislature's repeal of § 14-55 in 2003; see *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 809; that statutory standard no longer exists. As a result, municipal zoning boards are left in a precarious predicament: pursuant to § 14-54, they remain obligated to act on location approval applications as administrative agencies of the state, yet are bereft of any statutory standard to apply to such applications.[22] The challenge in acting on such applications is compounded by the fact that "members of a [municipal] zoning board typically are laypersons more familiar with their community than with the niceties of applicable law" and that "[z]oning boards ordinarily conduct their proceedings with some degree of informality." (Internal quotation marks omitted.) *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 50. As this court has observed, "[i]n light of these institutional realities, the legislature may well have thought it useful to provide specific statutory guidance for the manner in which zoning boards should conduct their proceedings . . . ." Id. With the repeal of § 14-55, such legislative guidance no longer is provided to municipal zoning boards.

As our Supreme Court emphasized in *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 825, the courts of this state cannot act as plenary lawgivers. See *Ashmore* v. *Hartford Hospital*, 331 Conn. 777, 787, 208 A.3d 256 (2019); *Hayes* v. *Smith*, 194 Conn. 52, 65, 480 A.2d 425 (1984). "We are not in the business of writing statutes; that is the province of the legislature." *State* v. *Rupar*, 293 Conn. 489, 511, 978 A.2d 502 (2009). Only the General Assembly can fill the legislative void created by the repeal of § 14-55.

The question, then, is what standard remains following the repeal of § 14-55. In this regard, we note the observation in *Charchenko* v. *Kelley*, supra, 140 Conn.

212–13, that "[w]hether or not a location for repairing automobiles and for dealing in used cars should be approved is to be determined upon the basis of the situation actually existing when the certificate of approval is sought. . . . An inquiry to resolve this question involved a consideration of all relevant circumstances." (Citation omitted.) In the absence of statutory criteria like those previously specified in § 14-55; see footnote 1 of this opinion; it is left to municipal zoning boards to determine, in their discretion, the factors relevant to their decision on whether to grant a location approval.[23]

Because municipal zoning boards act on location approval applications as administrative agencies of the state, appeals of such decisions are "governed not by General Statutes § 8-8, but by [§] 14-57." *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 47 n.6. Section 14-57, in turn, "incorporates the rules contained in [§] 4-183 of the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq.]." Id.; see footnote 15 of this opinion. Pursuant to § 4-183 (j), a reviewing court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Accordingly, a municipal zoning board's decision on a location approval application will be reversed only when it violates the precepts outlined in § 4-183 (j). With that context in mind, we turn to the plaintiff's claims.

B

On appeal, the plaintiff contends that the board committed an error of law by applying an improper legal standard to the location approval application submitted by Pisano.[24] More specifically, the plaintiff submits that the board (1) improperly treated the Pisano application as a variance request and (2) operated under the mistaken belief that a municipal zoning board lacks authority to deny a location approval application when the proposed use is permitted in the zone in question. We agree.

1

In *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 293–96, this court concluded that the board had rendered a formal, offi-

cial, collective statement of the reason for its decision in its certificate of decision on the Pisano application, which was recorded on the Stamford land records on September 29, 2016.[25] See generally *Verrillo* v. *Zoning Board of Appeals*, 155 Conn. App. 657, 672–76, 111 A.3d 473 (2015). For that reason, this court determined that the Superior Court improperly had searched beyond that stated reason in contravention of the maxim that a court "should not go behind the official statement of the board." *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 153, 365 A.2d 387 (1976); see also *DeMaria* v. *Planning & Zoning Commission*, 159 Conn. 534, 541, 271 A.2d 105 (1970) (when zoning agency has "formally stated" reason for its decision, court should not go behind that official, collective statement to search record for other reasons supporting decision); *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 51 (noting that "[t]he same rule" applicable to land use appeals applies in administrative appeals involving location approvals). Following our decision in *Elmcroft I*, no party petitioned for certification to appeal to the Supreme Court to challenge the propriety of that determination. We concur with, and are bound by, that settled determination. See *State* v. *Joseph B.*, 187 Conn. App. 106, 124 n.13, 201 A.3d 1108 ("we cannot overrule a decision made by another panel of this court absent en banc consideration"), cert. denied, 331 Conn. 908, 202 A.3d 1023 (2019).

In its certificate of decision on the Pisano application, the board set forth an explicit "statement of its findings and approval," stating in relevant part: "The board finds . . . [t]hat the aforesaid circumstances or conditions is/are such that the strict application of the provisions of these [r]egulations would deprive the [applicant] of the reasonable use of such land or building(s) and the granting of the application is necessary for the reasonable use of the land or building(s)." That language is identical to the standard contained in § 19.B.2.a (2) of the regulations for variance requests.[26] As the Superior Court noted in its memorandum of decision, the board's certificate of decision "looks and reads like a variance" approval. Our Supreme Court agreed with that observation. See *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 812 n.8.

We conclude that the collective statement of the basis of the board's decision indicates that the board improperly applied the legal standard that governs variance approvals under the regulations. Although the board alleges that this collective statement was a mere clerical error, the record belies that claim and demonstrates that the board misunderstood its proper role in acting on location approval applications. For example, upon its receipt of the Pisano application, the board referred it to, among other Stamford agencies, the Engineering Board and Planning Board and requested their "comments" on what the board characterized as a variance

request. See footnote 8 of this opinion. Nothing in the General Statutes authorizes a municipal zoning board, when acting on a location approval application as an agent of the state, to solicit feedback on the application from other municipal agencies. Furthermore, although the regulations permit the board to make such referrals when *variances* are requested; see Stamford Zoning Regs., § 19.B.3; they confer no such authority with respect to location approval requests. To the contrary, the regulations specifically require the board to "hear and decide" location approval applications for dealers' and repairers' licenses "in accordance with . . . [§§] 14-54 and [14-55] . . . ."[27] Stamford Zoning Regs., § 19.A.3.b. By referring the Pisano location approval application to other municipal agencies, the board exceeded its authority under § 19.A.3 of the regulations.[28]

The board's error in treating the Pisano application as a variance request was exacerbated by the terms of its subsequent approval. In its August 4, 2016 memorandum on the Pisano application, sent in response to the variance referral issued by the board, the Engineering Bureau informed the board that it had "reviewed plans for a variance to allow for a used car dealer to be located in the M-G Zone" and indicated that it "does not object to [the Pisano] application proceeding with the approval process with the following condition: New concrete curb and sidewalk shall be installed along the frontage of the property."[29] The Engineering Bureau also stated that "[c]urrently there is no sidewalk at this location and adjacent properties are equipped with sidewalks. Measures shall be taken to prevent vehicles from parking within the City [right-of-way]." In its certificate of decision, the board specifically conditioned its approval of the Pisano application on "[a]ll concerns of the Engineering [Bureau being] adhered to."[30] See footnote 14 of this opinion.

In the present case, the board issued a formal, official, collective statement of its decision, in which it expressly applied the legal standard that governs variance approvals under § 19.B.2.a (2) of the regulations to its review of a location approval application pursuant to § 19.A.3.b of the regulations. The board also issued a "variance" referral of the Pisano application to other municipal agencies, despite the fact that the board had no authority to do so under the regulations or the General Statutes. Moreover, the terms of the board's decision required the applicant to comply with "[a]ll concerns" articulated by a separate municipal agency. Those transgressions constitute errors of law that compromised the integrity of this administrative proceeding.

2

The plaintiff also contends that the board applied an incorrect legal standard by operating under the mistaken belief that a municipal zoning board lacks author-

ity to deny a location approval application when the proposed use is permitted in the zone in question. The record substantiates that contention.

During the public hearing, the board heard from Darosa, a neighbor who opined that the 6500 square foot property was "too small" for the applicant's proposed use and that such use was "not a fit for the area." In light of his concerns, an unidentified board member asked Darosa: "Is there something [the applicant] can do that would make [the proposed use] acceptable . . . if you could say, this is what I want, and we make that a condition [of approval] before [the applicant] proceeds, what would be on your wish list, or is there nothing?" Darosa responded in the negative, stating that the proposed use "just doesn't fit." Friedlander then explained to Darosa that she thought the question about potential conditions was asked "because [the applicant's proposed use] does have a right to exist" in the M-G zone. When Darosa replied, "Mm hmm, okay," Friedlander noted that "the question is how could it be made more palatable . . . ."[31]

The board's deliberations on the Pisano application began with White's statement that "this [application] has been made more complicated than it is. . . . Because there's a misunderstanding, perfectly understandable but, nonetheless, a misunderstanding, a misconception . . . . I don't think the neighbors really understand it, but *the key here, to me* . . . is [that the property is in] an MG zone, and there are businesses that can move in tomorrow that would not appear here." (Emphasis added.) White opined that the "only reason" the applicant was before the board was because of the "label" of its business as a car repair shop and stated that the board nevertheless had "the opportunity to try to make [the proposed use] even more acceptable to the neighborhood here" by attaching certain conditions to its approval. Friedlander agreed that the board could impose conditions but emphasized that "[t]hey have to be reasonable." At that point, Sedlak agreed with White that the board's hands were tied in light of the fact that an automobile repair business was a permitted use in the M-G zone under the regulations. As he stated, "unfortunately, this property is a lousy property for a repair shop, terrible. . . . It's lousy, but it's permitted." When Friedlander asked Antonelli if he had "anything you want to say" on the Pisano application, Antonelli similarly stated that "this is a good opportunity [to] improve the building [on the property]. . . . Because, again, it's an MG zone. Anybody can move in." Sedlak then replied: "Wait a second. We're still discussing this case. . . . There's conditions to be put on this." The board then discussed various potential conditions and granted the location approval.[32]

The transcript of the public hearing supports the plaintiff's contention that the board members mistak-

enly believed that a municipal zoning board lacks discretion to deny a location approval application when the proposed use is permitted in the zone in question. That perception is contrary to established precedent.

In *Mrowka* v. *Board of Zoning Appeals*, 134 Conn. 149, 149–51, 55 A.2d 909 (1947), the applicants sought licenses to sell gasoline and to conduct automobile repairs on a property in Plainville, both of which required them to obtain a location approval from the municipal zoning board of appeals. The zoning board denied the application due to traffic and safety concerns, and the plaintiffs appealed to the Superior Court. Id., 149–52. In reversing the determination of the zoning board, the Superior Court predicated its conclusion on the fact that "the lot in question is in an industrial zone" where "the use the plaintiffs propose to make of it is permissible in such a zone . . . ." Id., 152. The court emphasized that other commercial uses of nearby properties existed in the zone and opined that "no greater hazard would be created by the use of the premises for a gasoline station than by other uses permitted in such a zone." Id., 153. The court thus concluded that "[t]o exclude a gas station as a traffic hazard and yet regard the other enumerated uses as less likely to add to those traffic congestions or hazards inherent in any built up industrial zone seems to the court to be unsupported by rationality and therefore unreasonable and arbitrary and so to that extent unlawful." (Internal quotation marks omitted.) Id. The Supreme Court disavowed that reasoning, stating in relevant part: "To approve the court's reasoning would not only go against the judgment of the legislature but would destroy the right of a zoning board ever to refuse a certificate of approval for a gasoline station the proposed location of which was in an industrial zone, a conclusion which cannot be sound." Id., 154. The Supreme Court further characterized the Superior Court's reasoning as an "error in the fundamental basis of [its] decision . . . ." Id.

This court reached a similar conclusion in *Ferreira* v. *Zoning Board of Appeals*, 48 Conn. App. 599, 712 A.2d 423 (1998). Like the applicant here, the plaintiff in *Ferreira* sought a used car dealer license and, accordingly, filed a location approval application with the zoning board pursuant to § 14-54. Id., 600. Following a hearing, the zoning board denied the application, concluding that the proposed location was not suitable for such use. Id., 602. On appeal, the Superior Court "reasoned that, because the proposed use was permitted by existing zoning laws of the city of Shelton, it was presumed to be suitable." Id., 602–603. The Superior Court thus reversed the decision of the zoning board. Id., 602. From that judgment, the zoning board appealed to this court, which rejected the reasoning of the Superior Court. In reversing its judgment, we concluded that the Superior Court had "improperly substituted its judgment for that of the board" and that substantial evidence

existed in the record to support the board's conclusion that the location was not suitable for the plaintiff's proposed use. Id., 604–605.

*Mrowka* and *Ferreira* stand for the proposition that the fact that a proposed use is permitted in a particular zone does not obligate a zoning board to grant a location approval application. Indeed, *all* applications filed pursuant to § 14-54 necessarily involve uses that are permitted to some degree, as "[a] certificate of approval for a particular use cannot be issued if that use would violate zoning regulations." *Raymond* v. *Zoning Board of Appeals*, 164 Conn. 85, 89, 318 A.2d 119 (1972).

The General Assembly, in designating municipal zoning boards as agents of the state, entrusts in them the responsibility "to *determine* whether a certificate of approval should be issued." (Emphasis added.) *Mason* v. *Board of Zoning Appeals*, supra, 143 Conn. 637; see also id., 638 ("under the statute, the [zoning board] was to give or refuse to give its approval of a geographical site"); *Charchenko* v. *Kelly*, supra, 140 Conn. 212 ("[w]hether or not a location for repairing automobiles and for dealing in used cars should be approved is to be determined upon the basis of the situation actually existing when the certificate of approval is sought" and should entail "consideration of all relevant circumstances"); *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 59–60 (§ 14-54 "requires local zoning boards to decide the suitability of the location of an automobile dealership"); *East Coast Towing, Ltd.* v. *Stamford*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-09-6002900-S (June 30, 2010) (50 Conn. L. Rptr. 225, 227) ("The intention of § 14-54 is to have some relevant review of the placement of such a business. To allow an interpretation of the statutory requirement that approval is simply a 'rubber stamp' would ignore the purpose of the statute, that is, to permit the local authority that has knowledge and familiarity with the location to analyze . . . whether the operation is suitable for the location. It would be meaningless to enact a statute requiring a permit process if there was no discretion afforded the local authority to determine if the use 'fits' within the surrounding area."). When a zoning board is presented with a location approval application, it acts not in its zoning capacity, but as an agent of the state. See, e.g., *Sun Oil Co.* v. *Zoning Board of Appeals*, supra, 154 Conn. 35; *Dubiel* v. *Zoning Board of Appeals*, supra, 147 Conn. 520. Accordingly, in reviewing a location approval application, a municipal zoning board is obligated to make a determination, irrespective of the permitted nature of the proposed use, on whether a certificate of approval should issue. As a matter of law, the members of the board were mistaken in concluding otherwise during their deliberations.

IV

The plaintiff also contends that the board committed an error of law by failing to "consider or distinguish" a prior denial of a location approval application to operate a similar business on the property. That claim requires us to consider the proper application of the "impotent to reverse" rule, which presents a question of law subject to plenary review.[33] See *Purnell* v. *Inland Wetlands & Watercourses Commission*, 209 Conn. App. 688, 719, 269 A.3d 124, cert. denied, 343 Conn. 908, A.3d    (2022).

A

In many ways, the impotent to reverse rule operates as the administrative agency equivalent of the doctrine of stare decisis.[34] As this court recently explained, "[t]he impotent to reverse rule has governed the conduct of municipal administrative agencies in this state for more than ninety years. . . . [F]rom the inception of [land use regulation] to the present time, [our appellate courts] have uniformly held that a [municipal land use agency] should not ordinarily be permitted to review its own decisions and revoke action once duly taken. . . . Otherwise . . . there would be no finality to the proceeding and the decision would be subject to change at the whim of the board or through influence exerted on its members. . . .

"At the same time . . . although [f]inality of decision is . . . desirable in the administrative context . . . that principle is by no means inflexible. . . . The impotent to reverse rule thus embodies an important limitation on the ability of an administrative agency to reconsider its prior determinations, while at the same time affording a degree of flexibility in limited circumstances. The rule dictates that an administrative agency cannot reverse a prior decision unless there has been a change of conditions or other considerations have intervened which materially affect the merits of the matter decided. . . . Mere change in conditions or other factors is not enough; only proof of material change permits an agency to reconsider its prior determination. . . . Moreover, the impotent to reverse rule applies . . . only when the subsequent application seeks substantially the same relief as that sought in the former. And it is for the administrative agency, in the first instance, to decide whether the requested relief in both applications is substantially the same."[35] (Citations omitted; internal quotation marks omitted.) Id., 719–21.

Accordingly, in applying the impotent to reverse rule, a municipal administrative agency must make two distinct factual determinations. The agency must determine (1) whether the application in question seeks substantially the same relief as that sought in a previous application that was decided by that agency and (2) whether a change of conditions or other considerations have intervened that materially affect the merits of the

agency's decision on that prior application. See id., 720–21. Those factual questions must be answered by the municipal administrative agency in the first instance and cannot be decided by a reviewing court. See *Fiorilla* v. *Zoning Board of Appeals*, 144 Conn. 275, 279, 129 A.2d 619 (1957); *Hoffman* v. *Kelly*, 138 Conn. 614, 618, 88 A.2d 382 (1952); see also *Purnell* v. *Inland Wetlands & Watercourses Commission*, supra, 720–21; cf. *Hunter Ridge, LLC* v. *Planning & Zoning Commission*, 318 Conn. 431, 445, 122 A.3d 533 (2015) (Superior Court sits as appellate tribunal when hearing administrative appeal); *Shanahan* v. *Dept. of Environmental Protection*, 305 Conn. 681, 716 n.23, 47 A.3d 364 (2012) (appellate tribunal cannot find facts).

B

The plaintiff's claim is predicated on the undisputed fact that, in 2009, a company known as East Coast Towing, Ltd. (East Coast), applied for a location approval to operate a used car dealership on the property, which business included the "repair of vehicles and the storage of tow trucks" on the property. *East Coast Towing, Ltd.* v. *Zoning Board*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-10-6003028-S (March 2, 2011) (51 Conn. L. Rptr. 572, 573). Following a public hearing at which "members of the public opposed the application claiming that the [property] was unsuitable for the proposed use"; id.; the Zoning Board of the City of Stamford (agency) denied the location approval application. Id. East Coast appealed the propriety of that decision to the Superior Court, which concluded that there was substantial evidence to support the reasons stated by the agency for its denial of the application on suitability grounds pursuant to § 14-55.[36] Id., 578. The court, therefore, dismissed the administrative appeal. See id.

Like the East Coast application, the Pisano application here seeks a location approval to conduct used car sales, automotive repair, and the storage of a tow truck on the property. Because it involves a similar location approval request, the plaintiff posits that the board "committed legal error when it failed to address its 2009 decision [on the East Coast application] denying [a] location approval at the exact same site." The plaintiff further submits that, pursuant to the impotent to reverse rule, the board "should have compared the two [applications], and it was legal error for the [board] to reverse *its prior denial* without giving due consideration to whether circumstances had changed." (Emphasis added.) On the particular facts of this anomalous case, we disagree.

The impotent to reverse rule precludes a municipal administrative agency from revisiting "*its own decisions* and revok[ing] action once duly taken." (Emphasis added.) *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals*, 140 Conn. 527, 533, 102 A.2d 316 (1953);

see also *Malmstrom* v. *Zoning Board of Appeals*, 152 Conn. 385, 390, 207 A.2d 375 (1965) ("[o]rdinarily, an administrative agency cannot reverse a prior decision"); *Fiorilla* v. *Zoning Board of Appeals*, supra, 144 Conn. 279 (specifying when administrative agency is justified "in reversing itself"). The impotent to reverse rule "thus embodies an important limitation on the ability of an administrative agency to reconsider *its prior determinations . . . .*" (Emphasis added.) *Purnell* v. *Inland Wetlands & Watercourses Commission*, supra, 209 Conn. App. 720.

Contrary to the plaintiff's contention before both the Superior Court and this court, the board did *not* make any prior determinations or render a decision on the East Coast location approval application in 2009. Rather, that decision was made by the agency, which, at the time, was the entity designated by statute to act on location approval applications. See General Statutes (Rev. to 2003) § 14-54 (a). Critically, the agency and the board are separate municipal administrative agencies with distinct powers and duties under the city charter. See Stamford Charter §§ C6-40-1 and C6-50-1.

In 2016, the General Assembly amended § 14-54. See Public Acts 2016, No. 16-55, § 4. As a result of that amendment, the authority to act on approval location applications in Stamford was transferred from the agency to the board, effective July 1, 2016. The Pisano application was filed two weeks later. The fact that the board and its members had no previous involvement, and made no determinations, with respect to the East Coast location approval application undermines any claim that, in granting the Pisano application, the board improperly reversed itself in contravention of the impotent to reverse rule.

In its reply to the supplemental appellate brief filed by the applicant, the plaintiff suggests that the fact that the agency, rather than the board, decided the East Coast location approval application is a "distinction without a difference." The plaintiff has provided no authority to support that assertion, nor are we aware of any. The concurring and dissenting opinion likewise has identified no authority in which the impotent to reverse rule has been applied against a municipal agency that did not itself act on a prior application.

Furthermore, the record in the present case indicates that, although the use of the property by East Coast was vaguely alluded to by Darosa during the public hearing, the board never was apprised that the agency had rendered a decision on a location approval application for the property. Neither the agency's decision on the East Coast application nor the Superior Court's decision upholding the agency's determination was furnished to the board. In such circumstances, it would be imprudent and inequitable to impute constructive notice on the part of board members of the substance of the proceed-

ing before, and the decision of, a separate municipal agency seven years earlier. In this regard, we are mindful that members of municipal administrative agencies like the board "typically are laypersons more familiar with their community than with the niceties of applicable law"; *Mohican Valley Concrete Corp*. v. *Zoning Board of Appeals*, supra, 75 Conn. App. 50; and that their "procedural expertise may not always comply with the multitudinous statutory mandates under which they operate." *Gagnon* v. *Inland Wetlands & Watercourses Commission*, 213 Conn. 604, 611, 569 A.2d 1094 (1990). On the particular circumstances of this case, we conclude that the board did not commit an error of law by failing to distinguish the agency's 2009 denial of the location approval application by East Coast.[37]

V

As a final matter, we briefly address an ancillary issue raised sua sponte in the concurring and dissenting opinion regarding the ability of a municipal zoning board to conditionally approve a location approval application. Our Supreme Court has explained that "[w]ell established principles govern further proceedings after a remand by this court. In carrying out a mandate of [the Supreme Court], the [lower] court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the [lower] court must observe." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 522, 686 A.2d 481 (1996). In *Elmcroft II*, our Supreme Court remanded the case to this court with specific direction to "consider the plaintiff's remaining claims." *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 826. In this administrative appeal, the plaintiff has not raised any claim regarding the authority of a municipal zoning board, in acting on a location approval application pursuant to § 14-54, to condition its approval on an applicant's compliance with particular restrictions. Accordingly, that issue is beyond the scope of the remand ordered by our Supreme Court.

We recognize that municipal zoning agencies routinely attach conditions to location approvals. See, e.g., *Mohican Valley Concrete Corp*. v. *Zoning Board of Appeals*, supra, 75 Conn. App. 56 n.11; id., 62 (noting, in case in which board attached conditions to its approval, that "the board might have taken account of the willingness of the defendants to accept a certificate of approval with conditions designed to mitigate some of the concerns raised by the plaintiffs"); *University Realty, Inc.* v. *Planning Commission*, 3 Conn. App. 556, 558, 490 A.2d 96 (1985) (affirming decision to grant location approval that "was subject to certain conditions, one of which was approval from the defendant of the site development of the property as required by the city zoning regulations"); *Modern Tire Recapping Co*. v.

*Town Plan & Zoning Commission*, Superior Court, judicial district of Hartford, Docket No. CV-13-6041410-S (December 30, 2013) (commission granted location approval "with conditions"); *Gibson* v. *New Haven City Plan Commission*, Superior Court, judicial district of New Haven, Docket No. CV-07-4027997-S (October 27, 2008) (zoning board granted location approval subject to multiple conditions); *Zaldumbide* v. *Zoning Board of Appeals*, Superior Court, judicial district of Fairfield, Docket No. CV-90-270866 (July 23, 1992) (same). Moreover, the "application for automobile dealer's or repairer's license" form prepared by the department specifically asks whether "there are any restrictions placed on the licensee's uses of the property" by the municipal zoning agency.

At the same time, we are aware of no statutory authority for such conditional approval. Although the General Assembly expressly has conferred authority on municipal agencies to render conditional approval in certain contexts; see, e.g., General Statutes § 8-2 (a) (special permits granted by zoning agency may be subject "to conditions necessary to protect the public health, safety, convenience and property values"); General Statutes § 22a-42a (d) (1) (inland wetlands agency may impose conditions on permit to conduct regulated activity); it has not done so with respect to location approvals granted pursuant to § 14-54. Nonetheless, our Supreme Court has recognized, in another context, that "[a] zoning board of appeals may, *without express [statutory] authorization*, attach reasonable conditions to the grant of a variance." (Emphasis added.) *Burlington* v. *Jencik*, 168 Conn. 506, 509, 362 A.2d 1338 (1975). Mindful of the limited scope of our review on remand, we leave for another day the question of a zoning board's authority to render conditional approval on an application filed pursuant to § 14-54.

The judgment is reversed in part and the case is remanded to the Superior Court with direction to remand the case to the Zoning Board of Appeals for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion MOLL, J., concurred.

[1] General Statutes (Rev. to 2003) § 14-55 provides in relevant part: "No such certificate shall be issued until the application has been approved and such location has been found suitable for the business intended, with due consideration to its location in reference to schools, churches, theaters, traffic conditions, width of highway and effect on public travel."

All references to § 14-55 in this opinion are to the 2003 revision of the General Statutes.

[2] In the various materials in the record before us, that district is described interchangeably as the "M-G zone" and the "MG zone."

[3] The application form provided by the department asks applicants to specify the "type of license" being requested and contains four boxes labeled "new car dealer," "used car dealer," "general repairer," and "limited repairer." On the application completed by Pisano, he checked "used car dealer."

[4] In *Elmcroft I*, this court concluded that Pisano "had standing to apply to the board for location approval." *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 283. No party petitioned for certification to appeal to the Supreme Court with respect to the propriety of that

determination. For clarity, we refer to Pasquale Pisano and Pisano Brothers Automotive, Inc., collectively as the applicant and individually by name.

[5] The "APA TAB II #55" notation ostensibly is a reference to "Appendix A—Table II" of the Stamford Zoning Regulations, which pertains to permitted uses in commercial and industrial districts. "Auto Sales Area, Used" is listed as number fifty-five on that table.

[6] The record before us also contains an "application packet" review form, which specifies that "all applications must be reviewed by zoning enforcement prior to ZBA submittal." That form also contains the signature of the zoning enforcement officer.

[7] That regulatory provision comports with the statutory mandate of General Statutes § 8-6 (a), which provides in relevant part: "The zoning board of appeals shall have the following duties . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured . . . ."

[8] The record before us contains the board's formal referral of the Pisano application to various land use agencies. Appended to that referral is a document titled "Zoning Board of Appeals Referrals," next to which "86 Elmcroft Road" is handwritten. Under the section titled "Variances," the boxes corresponding to several municipal agencies are checked, including the Planning Board and the Engineering Bureau.

[9] We reiterate that the regulations require the Planning Board, in reviewing a *variance* application, to "set forth its opinion as to whether or not the proposed use or feature is in reasonable harmony with the various elements and objectives of the Master Plan . . . ." Stamford Zoning Regs., § 19.B.3.d (2).

[10] The notice published by the board stated:

"CITY OF STAMFORD
"ZONING BOARD OF APPEALS
"LEGAL NOTICE

"The [board] will hold a public hearing and meeting on Wednesday, September 14, 2016, at 7 PM in the Cafeteria located on the 4th floor of the Stamford Government Center Building, 888 Washington Boulevard, Stamford at which time and place the following application will be considered:

"Application #059-16 of [Pisano] for a [m]otor [v]ehicle approval of Table II, Appendix A, #55 (Auto Sales Requirements) of the [regulations] in order to allow a [u]sed [c]ar [d]ealer to operate and be located in an MG zone. Said property is located on the east side of Elmcroft Road in an MG zone and is known as 86 Elmcroft Road. This application is exempt from Coastal Area Management Approval, Exemption Number 10C.

"At the above mentioned time and place a public hearing will be held and all interested parties are invited to attend. After the public hearing, there may be a meeting to discuss and possibly decide the application and any other business pending before the [b]oard." (Emphasis omitted.)

[11] That statement mirrors the notation on the "variance" section of the Pisano application.

[12] With respect to the used car dealer aspect of his business, Pisano stated that there would be "no prices, no signs, no nothing" on any used cars stored on the property. He further explained that, "if I do sell a car, it's usually to a customer that comes in and asks, do you have anything for sale. That's the only reason. Otherwise, there's no banners or anything like that. I'm not—if I do sell cars, it would be anywhere from one to five a year at the most."

[13] Sedlak also articulated his frustration with the zoning classification of the area in question, stating: "Why the hell hasn't the Planning Board and the Zoning Board over the many, many years changed that side of the street to something different from [the] MG zone. . . . [T]he Zoning Board and the Planning Board have not done a good job. . . . [T]he zoning should have been changed on this [area] years ago."

[14] The conditions attached to the board's approval were:

"1. All concerns of the Engineering [Bureau] shall be adhered to.

"2. There shall be no more than [six] cars parked in the front.

"3. The [applicant] shall make an effort to contact the Engineering Bureau and discuss having [it] add sidewalks to the area.

"4. The hours of operation shall be [8 a.m. to 6 p.m.], Monday through Saturday.

"5. There shall be no vehicular parking between the front property line and the curb on Elmcroft Road.

"6. There shall be one tow truck only on the premises.

"7. There shall be year round evergreen screening around the property.

"8. There shall be no auto body shop or painting of cars on the premises.

"9. All cars belonging to visitors, patrons or employees shall be parked on the site at all times.

"10. No vehicle repairs shall be permitted outside of the building.

"11. No impact tools shall be used outside of the building.

"12. No storage of inoperative vehicles shall be permitted outside of the building.

"13. Outside visible storage of any automotive equipment including tires, batteries, auto parts, etc., shall not be permitted.

"14. The location, size, and appearance of the building and improvements shall be as per plan depicted on IMPROVEMENT LOCATION SURVEY, dated revised [July 15, 2016], copies of which are on file in the office of the [board]."

[15] General Statutes § 14-57 provides: "Any person aggrieved by the performance of any act [regarding the issuance of dealers' and repairers' licenses] by such local authority may take an appeal therefrom to the superior court for the judicial district within which such town or city is situated, or in accordance with the provisions of [§] 4-183. Any such appeal shall be privileged."

[16] General Statutes (Rev. to 2003) § 14-55 provides in relevant part: "In any town, city or borough the local authorities referred to in [§] 14-54 shall, upon receipt of an application for a certificate of approval . . . assign the same for hearing within sixty-five days of the receipt of such application. Notice of the time and place of such hearing shall be published in a newspaper having a general circulation in such town, city or borough at least twice, at intervals of not less than two days, the first not more than fifteen, nor less than ten days, and the last not less than two days before the date of such hearing and sent by certified mail to the applicant not less than fifteen days before the date of such hearing. . . ."

[17] We recognize that, on June 4, 2003, the legislature passed No. 03-265, § 9, of the 2003 Public Acts, which "purported to amend § 14-55 by appending two new sentences to the previously existing language." *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 810. For the reasons discussed in its comprehensive decision, our Supreme Court concluded that this attempted amendment of § 14-55 was ineffective in light of the legislature's repeal of § 14-55 days earlier. Id., 817–22. The Supreme Court thus held that "despite having passed multiple amendments to the statutory scheme governing certificates of approval of the location . . . the legislature has not yet seen fit to reenact the provisions previously set forth in § 14-55." (Citation omitted.) Id., 825.

[18] It is undisputed that Pisano Brothers Automotive, Inc., is not a new car dealer or a limited repairer.

[19] At the public hearing, Fox explained that he had asked the zoning enforcement officer about the proper classification of the proposed use on the property. The zoning enforcement officer informed him that he thought that a "repair shop would be a less intrusive use than a used [car dealer], so it would fall into that category" as a used car dealer.

[20] For that reason, we reject the plaintiff's ancillary contention that the "use described at the hearing was different than the license sought from the [department] . . . ."

[21] No member or representative of the plaintiff participated in the public hearing on the Pisano application.

[22] As one judge noted, "[w]e have the perhaps odd situation where these local zoning boards are posited as agents of the state but do not apply state mandated criteria in deciding to issue certificates of location approval." *Glenn* v. *Zoning Board of Appeals*, Superior Court, judicial district of New Haven, Docket No. CV-05-4010376-S (March 30, 2006) (*Corradino, J.*) (41 Conn. L. Rptr. 140, 143).

[23] Due to the repeal of § 14-55, zoning boards no longer are *obligated* to conduct a suitability analysis by applying the factors specified therein. At the same time, we are aware of no authority that would preclude consideration of those factors, notwithstanding repeal of that statute. As the plaintiff's counsel noted at oral argument before this court, "I don't think [a zoning board] could be faulted for applying a suitability analysis." We concur with that observation. A zoning board likewise is free to consider whether "the

use of the proposed location will . . . imperil the safety of the public." *Atlantic Refining Co.* v. *Zoning Board of Appeals*, 150 Conn. 558, 561, 192 A.2d 40 (1963).

[24] In the principal appellate brief that it filed when this appeal was commenced, the plaintiff claimed that the board "decided the [Pisano] application under the wrong standard." After the Supreme Court remanded the case to this court with direction to consider the plaintiff's remaining claims; see *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 826; the plaintiff requested permission to file "an expedited, supplemental brief addressing how the Supreme Court's partial reversal . . . affects the scope of the Appellate Court's review on remand." This court subsequently ordered the parties to file supplemental briefs addressing, inter alia, the question of whether, "irrespective of the issue of compliance with the repealed § 14-55," the board committed reversible error by applying an improper legal standard. The plaintiff and the applicant thereafter filed supplemental briefs in accordance with that order; the board did not file a supplemental brief or response of any kind.

[25] Friedlander signed that certificate of decision in her official capacity as chair of the board.

[26] Section 19.B.2.a of the regulations provides in relevant part: "In considering a variance application, the [b]oard shall state upon its record the specific written findings regarding all of the following conditions . . . . (2) . . . [T]he aforesaid circumstances or conditions are such that the strict application of the provisions of these [r]egulations would deprive the applicant of the reasonable use of such land or [b]uilding and the granting of the variance is necessary for the reasonable use of the land or [b]uilding."

[27] The regulations in effect at the time that Pisano filed his application in 2016 antedate the decision of our Supreme Court in *Elmcroft II*, which clarified that § 14-55 had been repealed by the legislature in 2003. Following its repeal, § 14-55 "must be considered . . . as if it never existed." (Internal quotation marks omitted.) *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 821; see also *State* v. *Daley*, 29 Conn. 272, 275 (1860) ("[t]he effect of [the] repeal was, for the most obvious reason, that the law, as to any proceedings under it which were not past and closed, must be considered as if it had never existed").

[28] In that respect, the board's referral more aptly is characterized as an unlawful procedure in contravention of § 4-183 (j) (3).

[29] That correspondence was read into the record at the public hearing.

[30] We also are troubled by the board's belated effort to minimize its reliance on the variance standard contained in § 19.B.2.a (2) of the regulations. The plaintiff commenced this administrative appeal on November 14, 2016. The plaintiff filed a memorandum of law in support thereof on February 27, 2017; the board and the applicant filed their respective memoranda in opposition on April 20 and 21, 2017. On September 18, 2017—two days before argument on the appeal was scheduled in the Superior Court—the board recorded a "revised certificate of decision" on the Stamford land records regarding the Pisano application. That certificate is identical to the one recorded one year earlier, with one exception. The statement of the board's findings is omitted, with the following language inserted in its place: "NOTE—This corrected [c]ertificate eliminates 'variance' language on the original [c]ertificate of [d]ecision . . . since [the Pisano application] is not a variance application, it is an application for [c]ertificate of [a]pproval for location of a [u]sed [c]ar [d]ealership." As this court noted in *Elmcroft I*, that revised certificate "was submitted to the Superior Court in a supplemental return of record. The record contains no indication as to how this revised decision was made, and it does not appear to have been issued in accordance with the modification procedures set forth in General Statutes § 4-181a et seq. It does not appear that the Superior Court considered the revised [certificate] when rendering its judgment." *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 291 n.9. Although we agree that this purported correction cannot properly be considered the formal, collective statement of the basis of the board's decision on the Pisano application, the recording of that document nonetheless suggests a tacit acknowledgment by the board that an improper standard was specified as the collective basis of its decision in the original certificate.

[31] After the public comment portion of the hearing concluded, Fox similarly stated: "[O]ne of the things that strikes me is that it is [in] an MG zone, this property. A lot of things can go there as of right because of the way the state of Connecticut has chosen to deal with used car dealers and car repair, [so] *this board does have to approve* the location." (Emphasis added.) Fox

then noted that the board had "the opportunity to put some limitations on what [the applicant] can do that, hopefully, will alleviate some of the concerns that you've heard tonight," and then discussed several potential conditions that the board could attach to its approval.

[32] The record indicates that, at the time of the hearing, the board was comprised of four regular members—Friedlander, Sedlak, White, and Antonelli—and two alternate members, Ernest Matarasso and Matthew Tripolitsiotis. Although the transcript of the public hearing does not indicate that Tripolitsiotis was designated to act on the Pisano application in accordance with General Statutes § 8-5a; see, e.g., *Komondy* v. *Zoning Board of Appeals*, supra, 127 Conn. App. 675–76; and Tripolitsiotis is not identified in any manner in that transcript, the minutes of the board's September 14, 2016 meeting state that Tripolitsiotis voted to approve the Pisano application along with the four regular members of the board.

The transcript of the September 14, 2016 meeting also indicates that the members of the board never formally voted on the Pisano application, nor was any motion to approve the application made by any member. Rather, following a discussion of potential conditions, Friedlander simply declared: "Application 059-16, 86 Elmcroft Road has been approved, five votes in favor, none in opposition with the following conditions."

[33] Although our conclusion in part III of this opinion that the board erroneously applied an incorrect legal standard is dispositive of the appeal and necessitates a remand to the board for a new hearing, the plaintiff's impotent to reverse claim is almost certain to arise on remand. We, therefore, deem it appropriate to address that claim. See, e.g., *Oudheusden* v. *Oudheusden*, 338 Conn. 761, 778, 259 A.3d 598 (2021); *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 325, 63 A.3d 896 (2013). By contrast, we decline to address the plaintiff's claim that the conditions that were attached to the board's approval; see footnote 14 of this opinion; are impossible to satisfy. We decline to speculate as to (1) whether the board, on remand, will grant the location approval application, (2) whether the board, on remand, will attach any conditions to such approval, and (3) the nature of any such conditions. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970 A.2d 578 (2009) (speculation and conjecture have no place in appellate review).

[34] "The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of [decision-making] consistency . . . and . . . is an obvious manifestation of the notion that [decision-making] consistency itself has normative value." (Internal quotation marks omitted.) *Spiotti* v. *Wolcott*, 326 Conn. 190, 201, 163 A.3d 46 (2017).

[35] Our Supreme Court has held that the impotent to reverse rule applies in the specific context of location approval applications. See *Mason* v. *Board of Zoning Appeals*, supra, 143 Conn. 639 (observing, in case involving location approval application, "that, after an administrative agency has made a decision relating to the use of real property, it is ordinarily powerless to reverse itself, although it may do so if a change in circumstances has occurred since its prior decision, or other considerations materially affecting the merits of the subject matter have intervened and no vested rights have arisen").

[36] In light of the legislature's repeal of § 14-55 in 2003, the propriety of the agency's December 14, 2009 denial of the East Coast application is questionable. We note in this regard that the Superior Court, in its 2011 decision affirming that denial, erroneously concluded that "§ 14-55 was actually not repealed in [2003] and that the statute remains in effect . . . ." *East Coast Towing, Ltd.* v. *Zoning Board*, supra, 51 Conn. L. Rptr. 577; contra *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 337 Conn. 809 (concluding that § 14-55 was repealed in 2003).

[37] This opinion should not be construed to preclude the parties, on remand, from providing the board with evidence regarding the East Coast location approval application and the agency's decision to deny that request in 2009. The board, as arbiter of credibility, is entitled to assign whatever weight it deems appropriate to such evidence. See *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 676, 757 A.2d 1 (2000) ("[n]either this court nor the [Superior Court] may . . . substitute its own judgment for that of the administrative agency on

the weight of the evidence" (internal quotation marks omitted)), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001).